# JOSEPH JULIAN ET AL. *v.* LIBERTY MUTUAL INSURANCE COMPANY
## (14727)

Spear, Hennessy and Shea, Js.

Argued March 21—officially released October 1, 1996

*John J. Dunham*, for the appellants (plaintiffs).

*Robin S. Linker*, for the appellee (defendant).

SHEA, J. The plaintiffs appeal from a summary judgment for the defendant insurer on their four count complaint, in which they sought damages for the refusal of the defendant to defend and assume responsibility for a patent infringement suit against the plaintiffs pursuant to the terms of the general liability policy issued to the plaintiffs.[1] The principal issue on appeal is whether the policy provision affording coverage for "advertising injury" includes the claims against the plaintiffs set forth in the complaint that instituted the patent infringement action. The trial court held that the complaint cannot reasonably be construed to allege any claim relating to "advertising injury" as defined in the policy. We affirm the judgment of the trial court.

There is no disagreement about the relevant facts. The plaintiff Coilmate, Inc. (Coilmate), manufactures and sells a machine known as a "Coilmate decoiler" to various businesses throughout the United States. The plaintiff Joseph Julian is its president and sole shareholder. On October 23, 1991, Kenturo Takahashi filed a complaint for patent infringement against Coilmate and Julian in the United States District Court for the

[1] The trial court, *Goldberg, J.*, granted the defendant's motion for summary judgment on the first two counts. The trial court, *Handy, J.*, subsequently granted the defendant's motion for summary judgment on the third and fourth counts, in which each plaintiff claimed the breach of an implied covenant of good faith and fair dealing based on the defendant's refusal to defend the patent infringement action. The plaintiffs have not briefed any claims relating to the summary judgment on the third and fourth counts. Accordingly, we treat any challenge to Judge Handy's action as abandoned. *Gaudet v. Safeco Ins. Co.*, 219 Conn. 391, 403, 593 A.2d 1362 (1991); *Williams v. Chameides*, 26 Conn. App. 818, 825, 603 A.2d 1211, cert. denied, 221 Conn. 923, 608 A.2d 689 (1992).

District of Connecticut, alleging that they had infringed and had induced others to infringe a United States patent that he owned "in connection with the manufacture, sale and use of decoiler machines such as the machine known as 'Coilmate' . . . ." The complaint in that action sought treble damages and attorney's fees, alleging that the infringement was of a "willful and deliberate nature." When Coilmate and Julian requested their liability insurer, the defendant, Liberty Mutual Insurance Company (Liberty), to defend the federal court action, it refused to do so, maintaining that a patent infringement suit is not included within the coverage afforded by its policy. The plaintiffs proceeded then to defend the federal court action and claim to have incurred litigation expenses of $180,000 in doing so, in addition to a payment of $90,000 to settle the claim, for which they seek reimbursement in this action.

The policy that Liberty issued to insure both plaintiffs is entitled "Commercial General Liability Form" and provides coverage, inter alia, for any damages that the insured becomes obligated to pay "because of . . . 'advertising injury' to which this coverage part applies." More specifically, the policy states: "This insurance applies to . . . 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services." Excluded from that statement of coverage is advertising injury arising out of eight specific situations, none of which are claimed to be applicable in this case.

The term, "advertising injury," is defined in the policy definitions schedule as "injury arising out of one or more of the following offenses," one of which the plaintiffs claim fits the "offense" of patent infringement involved in this case: "infringement of copyright, title or slogan." The plaintiffs maintain that "title" means the right to ownership of any kind of property, such as a patent, and, therefore, a complaint alleging infringe-

ment of a patent involves essentially a claim of trespass upon the "title" or ownership rights created by the patent. Even if patent infringement is encompassed in the phrase, "infringement of . . . title," they recognize that policy coverage is available only when the advertising injury is "caused by an offense committed in the course of advertising goods, products or services." The plaintiffs argue that that requirement is satisfied in this case because Julian's affidavit filed in the summary judgment proceeding, which the defendant has not controverted, states that he advertised the Coilmate decoiler extensively in brochures mailed to potential customers, in metal industry magazines, and at various trade shows. The affidavit also indicates that these advertisements resulted in substantial sales of that product to customers. The plaintiffs contend that those activities might well constitute the offense referred to in the Takahashi complaint by the allegation that the plaintiffs "induced others to infringe" the patent involved in that litigation.

## I

## INFRINGEMENT OF TITLE

The argument that a patent infringement suit constitutes a claim of infringement of title and thus falls within the policy definition of advertising injury is consistent with most dictionary definitions of the word title. Lexicographers offer several definitions of "title," such as "inscription," "a descriptive heading," and "an appellation of dignity, honor or preeminence attached to a person or family." They also ordinarily include a definition involving the ownership of property: "the union of all the elements constituting legal ownership"; Webster's Third New International Dictionary; "[t]he foundation of ownership . . . [t]he means whereby an owner is enabled to maintain or assert his possession and enjoyment"; Ballentine's Law Dictionary (3d Ed.

1969); "[t]he formal right of ownership of property"; Black's Law Dictionary (6th Ed. 1990); "the legal right to possession of property"; Random House Dictionary of the English Language (2d Ed. 1987); and "owning" "possession." Roget's International Thesaurus (5th Ed. 1994).

In most of the cases that have construed the phrase "infringement of copyright, title or slogan" in policy provisions defining advertising injury, however, the courts have concluded that "title" does not include the right of ownership of property embodied in a patent. "First, and perhaps most significantly, there is the glaring absence of the word 'patent' anywhere in the policy language defining advertising injury. . . . Surely if coverage for patent infringement were anticipated there would be some mention of the term itself just as 'copyright' is explicitly listed." *Owens-Brockway Glass Container, Inc.* v. *International Ins. Co.*, 884 F. Sup. 363, 367 (E.D. Cal. 1995). "It is even more absurd to suggest that the phrase 'infringement of . . . title,' as used in the clause 'infringement of copyright, title or slogan,' encompasses patent infringement or inducement to infringe. Basic common sense dictates that if these policies covered any form of patent infringement, the word 'patent' would appear in the quoted 'infringement' clauses." *Gencor Industries, Inc.* v. *Wausau Underwriters Ins. Co.*, 857 F. Sup. 1560, 1564 (M.D. Fla. 1994). "And it is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of 'copyright, title or slogan,' but then include patent infringement, sub silentio, in a different provision . . . ." *St. Paul Fire & Marine Ins. Co.* v. *Advanced Interventional Systems, Inc.*, 824 F. Sup. 583, 586 (E.D. Va. 1993). "A plain reading of the term 'infringement of copyright, title or slogan' in the course of advertising activities also would exclude a

claim of patent infringement." *Atlantic Mutual Ins. Co. v. Brotech Corp.*, 857 F. Sup. 423, 429 (E.D. Pa. 1994).

The plaintiffs rely on two cases in which "piracy" was included among the offenses constituting advertising injury in the policy definition of that term[2] and was construed to include patent infringement, but those cases reached opposite conclusions with respect to the relationship of that offense to advertising. *Aqua Queen Mfg., Inc.* v. *Charter Oak Fire Ins.*, 830 F. Sup. 536, 538 (C.D. Cal. 1993); *National Union Fire Ins. Co. of Pittsburgh* v. *Siliconix Inc.*, 729 F. Sup. 77, 79 (N.D. Cal. 1989). In *Iolab Corp.* v. *Seaboard Surety Co.*, 15 F.3d 1500, 1506 (9th Cir. 1994), however, the court restricted piracy as used in defining advertising injury to "misappropriation or plagiarism found in the elements *of the advertisement itself* . . . rather than in the product being advertised." (Emphasis in original.) In any event, that word is not included in the definition of advertising injury contained in the policy involved in this case.[3] The plaintiffs also cite two cases construing the phrase infringement of title to afford coverage for misappropriation of trade secrets and other confidential information arising out of activities held to constitute advertising. *Sentex Systems, Inc.* v. *Hartford Accident & Indemnity Co.*, 882 F. Sup. 930, 944 (C.D. Cal. 1995); *Merchants Co.* v. *American Motorists Ins. Co.*, 794 F. Sup. 611, 618 (S.D. Miss. 1992). In those cases, the courts applied the alternative definition of title offered by lexicographers to include the right of ownership of property, and found sufficient ambiguity in the phrase "infringement

[2] Several dictionaries define "piracy" to include patent infringement explicitly. Black's Law Dictionary (6th Ed. 1990); Oxford English Dictionary (2d Ed. 1989); Webster's Encyclopedic Unabridged Dictionary of the English Language (1989).

[3] The policy issued by the defendant insurer includes "[m]isappropriation of advertising ideas or style of doing business" in the definition of "advertising injury." The plaintiffs have not relied on that provision to support their claim of coverage for patent infringement suits.

of copyright, title or slogan" to resolve the coverage issue in favor of the insured. It is significant that the plaintiffs do not refer to any case holding that such a phrase creates a reasonable expectation on the part of the insured for liability coverage of patent infringement claims.

The plaintiffs raise well established principles of construction that are frequently applied in insurance coverage disputes: (1) when there is ambiguity, an insurance policy should be construed "in favor of insurance coverage because it is the insurance company that has drafted the terms of the policy"; *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 375, 593 A.2d 498 (1991); and (2) the duty of an insurer to defend an action is broader than its duty to indemnify and depends on "whether the complaint in that action stated facts which appeared to bring [the] claimed injury within the policy coverage." *Missionaries of the Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 110, 230 A.2d 21 (1967); *Schwartz* v. *Stevenson*, 37 Conn. App. 581, 585, 657 A.2d 244 (1995). The defendant refers to other rules of contract interpretation: (1) "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings"; *Downs* v. *National Casualty Co.*, 146 Conn. 490, 494–95, 152 A.2d 316 (1959); (2) "the meaning of policy language should ordinarily be drawn from the context in which it is used"; *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 61, 588 A.2d 138 (1991); and (3) "[t]he court must interpret the insurance contract as a whole with all relevant provisions considered together." *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 705, 569 A.2d 1131 (1990).

Those standard rules of insurance contract interpretation have been applied by the courts that have rejected

the contention that "infringement of title" includes infringement of patent rights and that insurers are obliged to defend such suits when that phrase is included in a definition of "advertising injury." While acknowledging that the definition of title referring to ownership rights is included in most dictionaries, those courts have applied the principle of noscitur a sociis[4] and have found no ambiguity in the phrase infringement of title in the context of the other policy provisions defining advertising injury. "The language defining 'advertising injury' includes 'slander,' 'libel,' 'right of privacy,' 'advertising ideas,' 'style of doing business,' and 'copyright.' These are specific terms connected to well known legal categories, just as a claim of patent infringement is a distinct legal claim." *Owens-Brockway Glass Container, Inc.* v. *International Ins. Co.*, supra, 884 F. Sup. 367. "[I]n the context of a . . . standard 'advertising injury' provision the term 'title' refers to a distinctive name or designation used to identify a literary or artistic work and not to the legal concept of ownership of property." *Atlantic Mutual Ins. Co.* v. *Brotech Corp.*, supra, 857 F. Sup. 429; see *J.A. Brundage Plumbing & Roto-Rooter, Inc.* v. *Massachusetts Bay Ins. Co.*, 818 F. Sup. 553, 559 (W.D.N.Y. 1993).

We are not inclined to chart new pathways in the law with respect to an interpretation of a single word in an insurance policy that excludes coverage for one special category of claims, when that interpretation has been approved by every court that has considered the issue as far as we are aware. It is preferable that such matters should be regarded as settled. We conclude that, in the context of the policy before us, the inclusion of the phrase infringement of title in the definition of advertising injury does not create a reasonable expectation on the part of an insured for liability coverage

---

[4] "[I]t is known by the company it keeps." 3 A. Corbin, Contracts (1960) § 552.

of patent infringement claims even under the broad standard of potential liability followed in cases involving the duty to defend.

## II

## DIRECT PATENT INFRINGEMENT

The conclusion we have reached in part I, that title, as used in the policy definition of advertising injury, does not refer to the ownership rights represented by a patent, makes our discussion of the second aspect of that definition relating to causation somewhat superfluous. Our consideration of that issue, however, does provide additional support for our holding that the coverage provided in the policy for advertising injury does not obligate the defendant to defend direct[5] patent infringement claims. The insuring agreement[6] provides coverage for " '[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products or services." The provision defining the term advertising injury restricts its meaning to "injury arising out of one or more of the following offenses," among which is listed "[i]nfringement of copyright, title or slogan."[7] Thus, the policy imposes two requirements for coverage of an advertising injury, even when a specified offense, such as infringement of title, is involved. First,

[5] Patent infringement is direct when the infringer has violated 35 U.S.C. § 271 (a), which provides: "Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent."

[6] The insuring agreement ("Coverage B. Personal and Advertising Injury Liability") provides in part: "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this coverage part applies. We will have the right and duty to defend any 'suit' seeking those damages. . . . b. This insurance applies to . . . (2) 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services."

[7] The policy provides: " 'Advertising injury' means injury arising out of one or more of the following offenses . . . d. Infringement of copyright, title or slogan."

that injury must have been one arising out of the offense in order to qualify under the definition of advertising injury. Second, it must have been "caused by an offense committed in the course of advertising [the insured's] goods."

The complaint in the patent infringement suit brought against the plaintiffs by Takahashi contains no reference to any advertising activities of the plaintiffs. It alleges only that each plaintiff "has infringed and is infringing and has induced others to infringe [Takahashi's patent] in connection with the manufacture, sale and use of decoiler machines such as the machine known as 'Coilmate'. . . ." The affidavit filed by the plaintiffs in opposition to the defendant's motion for summary judgment, however, states that, since the formation of Coilmate in 1986, its decoiler has been widely advertised at trade shows, in brochures mailed to potential customers, and in trade magazines. The affidavit also indicates that these advertising activities have resulted in sales to customers who had seen the brochures or the magazine advertisements.

The plaintiffs argue that the policy language does not require "that the covered injury itself be caused by advertising" and, therefore, that it is "incorrect to require that the Takahashi complaint allege an injury resulting from or caused by advertising." We disagree. The plaintiffs overlook the provision of the insuring agreement limiting coverage even for an offense satisfying the definition of advertising injury: "This insurance applies to . . . (2) 'Advertising injury' *caused* by an offense committed in the course of advertising [the insured's] goods, products or services." (Emphasis added.) We construe that provision to mean that a covered advertising injury would have to be causally related to an offense, such as infringement of title, that is itself causally related to the insured's advertising activities.

In similar cases claiming coverage for patent infringement on the basis of insurance protection for advertising injury, most of the courts have insisted on a causal nexus between that injury and the insured's advertising. "To compel an insurer to defend under an advertising injury provision, the insured must demonstrate a causal connection between the plaintiff's claim in the underlying action and the defendant-insured's advertising." *Everest & Jennings, Inc.* v. *American Motorists Ins. Co.*, 23 F.3d 226, 229 (9th Cir. 1994). "Even if patent infringement were included in the specified acts defining 'advertising injury,' the claim in the underlying complaint would not trigger a duty to defend. Even where a claim is for conduct specified in the definition of advertising injury, courts have consistently held that there must be a causal connection between the injury alleged in the underlying complaint and the insured's advertising activity." *Atlantic Mutual Ins. Co.* v. *Brotech Corp.*, supra, 857 F. Sup. 429. "Because direct infringement involves the making, using, or selling of the patented invention, the infringement does not occur in the course of the insured's advertising activities." *Intex Plastics Sales Co.* v. *United National Ins. Co.*, 23 F.3d 254, 256 (9th Cir. 1994); *National Union Fire Ins. Co. of Pittsburgh* v. *Siliconix Inc.*, supra, 729 F. Sup. 80; *Bank of the West* v. *Superior Court*, 2 Cal. 4th 1254, 1275, 833 P.2d 545, 10 Cal. Rptr. 2d 538 (1992) (same).

The plaintiffs maintain that, even if a causal relationship between the alleged patent infringement and the insured's advertising is essential, that requirement is satisfied by their affidavit describing their advertising activities and referring to the sales that resulted therefrom, because sales and advertising are inextricably intertwined. They rely on *Aqua Queen Mfg., Inc.* v. *Charter Oak Fire Ins.*, supra, 830 F. Sup. 538, in which the court concluded that the insured's "advertising

activities were part and parcel of its sales and that selling an infringing product is an infringement occurring in the course of advertising and therefore covered by the Policy as a type of advertising injury." That decision, however, was reversed without a published opinion. *Aqua Queen Mfg. Co.* v. *Charter Oak Fire Ins. Co.*, 46 F.3d 1138 (9th Cir. 1995). Most courts have rejected the proposition that sales of an infringing product advertised by the insured establish a causal relationship between the advertisements and the infringement. "Even if true, these facts [increased sales of the infringing product] simply do not establish the necessary causal connection between the alleged infringement and [the insured's] advertising." *Everest & Jennings, Inc.* v. *American Motorists Ins. Co.*, supra, 23 F.3d 226. "[T]he mere advertising of a patented device is not itself an infringement." *Ling-Temco-Vought, Inc.* v. *Kollsman Instrument Corp.*, 372 F.2d 263, 270 (2d Cir. 1967). "[T]he infringing act is the making, using, or selling of a patented invention, not the mere advertising of the invention." *National Union Fire Ins. Co. of Pittsburgh* v. *Siliconix Inc.*, supra, 729 F. Sup. 79. "[A] claim of patent infringement does not occur in the course . . . of advertising activities within the meaning of the policy even though the insured advertises the infringing product . . . ." (Internal quotation marks omitted.) *Iolab Corp.* v. *Seaboard Surety Co.*, supra, 15 F.3d 1505.

The plaintiffs have not suggested any manner in which advertising could cause direct patent infringement, and we are unable to visualize any. Since the creation of the infringing product must precede its advertisement, the latter can hardly be the cause of the former. We conclude that the inability to establish any causal relationship between the plaintiffs' advertising activities and the alleged patent infringement would preclude their claim of an advertising injury as defined in the policy.

## III

## INDUCEMENT TO INFRINGE

The plaintiffs' fallback position is that, even if their claim of entitlement to a defense of the direct patent infringement claim in the Takahashi complaint should fail, the allegations that each plaintiff "induced others to infringe" the patent involved obligated the defendant to defend at least that aspect of the litigation. Despite the lack of any reference in the Takahashi complaint to advertising, the plaintiffs maintain that the elasticity of notice pleading in the federal courts would have permitted the introduction of evidence under the inducement allegations to prove that the plaintiffs' advertisements had induced some persons to infringe by purchasing or using the infringing product.

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271 (b). It has been held that an allegation of a violation of that provision imposed on the insurer a duty to defend a patent infringement suit because liability as an inducer may arise out of the advertising activities of an insured. *Union Ins. Co.* v. *Land & Sky, Inc.*, 247 Neb. 696, 703, 529 N.W.2d 773 (1995). "Liability under 35 U.S.C. § 271 (b) can be established where a party takes active steps to induce infringement through advertising or by providing instructions." *Rexnord, Inc.* v. *Laitrim Corp.*, 6 U.S.P.Q.2d 1817, 1842 (E.D. Wis. 1988).

The defendant cites authorities indicating that a direct patent infringer cannot also be liable for having induced others to infringe. *Fromberg, Inc.* v. *Thornhill*, 315 F.2d 407, 411 n.11 (5th Cir. 1963); *New Hampshire Ins. Co.* v. *R.L. Chaides Construction Co.*, 847 F. Sup. 1452, 1458 (N.D. Cal. 1994). There has been no determination of whether the plaintiffs were direct patent infringers, however, nor could that issue have been resolved at the time the Takahashi complaint was filed.

In any event, the plaintiffs in this case would not have been entitled to a defense of the inducement claim because of our determination that the offense of infringement of title in the definition of advertising injury in the policy does not refer to the ownership of patent rights. The effect of that holding in part I precludes coverage for patent infringement by inducing others to infringe in violation of 35 U.S.C. § 271 (b) or by directly violating 35 U.S.C. § 271 (a).

The judgment is affirmed.

In this opinion the other judges concurred.