[No. H018151. Sixth Dist. Sept. 16, 1999.]

MAXCONN INCORPORATED, Plaintiff and Respondent, v.
TRUCK INSURANCE EXCHANGE, Defendant and Appellant.

COUNSEL

Goldsberry, Freeman & Swanson and Palmer J. Swanson for Defendant and Appellant.

Mount & Stoelker, Daniel S. Mount and Alfredo A. Bismonte for Plaintiff and Respondent.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—In this case, we decide whether patent infringement may be considered advertising injury under a commercial general liability (CGL) policy that defines advertising injury as "[i]nfringement of copyright, title or slogan." We conclude that the term *infringement of title* is a reference to any infringement of a legally protected name, appellation or designation. Hence, patent infringement does not constitute advertising injury as that term is defined in the CGL policy in this case. We reverse the judgment for declaratory relief requiring appellant Truck Insurance Exchange (Truck) to defend respondent Maxconn Incorporated (Maxconn) in an underlying lawsuit for patent infringement.

## Factual Background

On or about December 11, 1996, Amphenol Corporation and Alan L. Pocrass filed an action for patent infringement against Maxconn and a company called Nu-Way Electronics, Inc. (Nu-Way) in the United States District Court for the Northern District of Illinois, Eastern Division. The complaint alleged that United States Letters Patent No. 4,978,317 was issued to Mr. Pocrass for an invention called a "Connector With Visual Indicator." Amphenol was a corporation that had rights in the patent, including the right to sue for infringement of the patent. The single cause of action of the complaint alleged Maxconn and Nu-Way infringed the patent by "offering to sell certain electrical connectors using visual indicators which embody the Patented Invention ('the Infringing Products') within this District." The complaint incorporated a copy of a Maxconn/Nu-Way sales brochure, which depicted the infringing products and described them as "LED Modular Jacks." The complaint further alleged Maxconn had been advised of the infringement and the infringement was willful, wanton and egregious. The infringement would have continued unabated unless enjoined. The plaintiffs requested a judgment in their favor, including an order enjoining any further infringement of the patent and an award of damages adequate to compensate plaintiffs for the infringement.

On December 20, 1996, Maxconn tendered the defense of this action to its insurance carrier, Farmers Insurance Group of Companies, which included Truck. Truck had issued a CGL policy to Maxconn, covering the policy period between October 19, 1996, and October 19, 1997. The policy provided, in pertinent part: "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' or offense and settle any claim or 'suit' that may result. . . . [¶] . . . [¶] No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A And B. [¶] b. This insurance applies to: [¶] . . . [¶] (2) 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the 'coverage territory' during the policy period."

Advertising injury was defined in section V of the policy as follows: "1. 'Advertising injury' means injury arising out of one or more of the following offenses: [¶] a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods,

products or services; [¶] b. Oral or written publication of material that violates a person's right of privacy; [¶] c. Misappropriation of advertising ideas or style of doing business; or [¶] d. Infringement of copyright, title or slogan."

Truck initially agreed to defend Maxconn under a full reservation of rights letter dated January 15, 1997. Maxconn then requested that Truck provide it with independent counsel, selected by Maxconn, pursuant to Civil Code section 2860.[1] Truck subsequently denied coverage and refused the tender of defense in a letter dated February 20, 1997. Truck asserted that the alleged claim in the lawsuit did not meet the definition of advertising injury as stated in the CGL policy, and the policy did not cover the claimed loss.

Maxconn filed a complaint for declaratory relief on March 31, 1997. The complaint contained two causes of action. In the first, Maxconn sought a judicial declaration that Truck was obligated to provide Maxconn with a defense against the Amphenol complaint under the CGL policy. In the second cause of action, Maxconn sought an order that Truck was obligated under Civil Code section 2860 to provide Maxconn with a defense by independent counsel selected by Maxconn.

On May 2, 1997, Maxconn filed a motion for summary adjudication of the first cause of action of its complaint. Maxconn argued that patent infringement fell within the meaning of advertising injury as the policy defined that term. Advertising injury was defined in the policy, in part, as "[i]nfringement of copyright, title or slogan." Maxconn asserted that a reasonable layperson could understand the word *title* to mean ownership of property, which could include ownership rights in intellectual property, such as a patent. Consequently, infringement of title could equate to infringement of patent.

In opposition to the motion for summary adjudication, Truck asserted that patent infringement did not qualify as advertising injury under any of the specifically enumerated offenses in the policy. Truck argued several cases that had addressed the issue directly had held infringement of title, read in context, did not logically include patent infringement. Patent infringement was not mentioned specifically in the policy. Furthermore, the word *title* in

[1]Civil Code section 2860 provides, in pertinent part: "(a) If the provisions of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that counsel consistent with this section."

the phrase "[i]nfringement of copyright, title or slogan," was intended as a reference to a legally protected name or designation, rather than a property interest.

The superior court granted Maxconn's motion. The court's order, filed June 13, 1997, provided: "Plaintiff Maxconn Incorporated's motion for summary adjudication is GRANTED. The court finds the policy term 'infringement of . . . title' to be ambiguous, as it has no plain and clear meaning within the context of the policy as a whole. The court finds that according to the objectively reasonable expectations of the insured, the underlying claim[s] for patent infringement are covered by the provisions of the 'CGL' policy. *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254 [10 Cal.Rptr.2d 538, 833 P.2d 545]." Judgment requiring Truck to provide Maxconn with a defense under the CGL policy was filed January 27, 1998.[2]

Truck filed its notice of appeal on February 17, 1998.

## DISCUSSION

### A. *Standard of Review*

On appeal, we review the trial court's order granting summary adjudication de novo, applying the standards governing interpretation of insurance contracts set forth below. (*Exxon Corp.* v. *Superior Court* (1997) 51 Cal.App.4th 1672, 1679 [60 Cal.Rptr.2d 195].) "Since a motion for summary judgment or summary adjudication 'involves pure matters of law,' we review a ruling on the motion de novo to determine whether the moving and opposing papers show a triable issue of material fact." (*Travelers Casualty & Surety Co.* v. *Superior Court* (1998) 63 Cal.App.4th 1440, 1450 [75 Cal.Rptr.2d 54].)

A liability insurer owes a broad duty to defend its insured against a claim that seeks damages potentially within the coverage of the policy. The court determines the insurer's obligation to defend by comparing the allegations of the complaint with the terms of the policy. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) An insurer has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy, or when the underlying suit potentially seeks damages within the coverage of

[2]On December 3, 1997, Maxconn filed a request for dismissal without prejudice of the second cause of action requesting appointment of independent counsel in its complaint for declaratory relief.

the policy. (*Foster-Gardner, Inc.* v. *National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 869 [77 Cal.Rptr.2d 107, 959 P.2d 265].)

An insurance policy is a contract between an insurer and an insured. (*Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 45 [65 Cal.Rptr.2d 366, 939 P.2d 766].) "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) The goal of contractual interpretation is to give effect to the mutual intention of the parties. Where the policy language is clear and explicit, it will govern. The provisions of a policy also must be considered in their full context. If the terms of the policy are uncertain or ambiguous, they must be interpreted in the sense in which the insurer believed that the insured understood them at the time the policy was made. This rule, of course, protects the objectively reasonable expectations of the insured. (*Id.* at pp. 1264-1265.)

"In summary, a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. [Citation.] This is because '*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract.*' " (*Bank of the West,* v. *Superior Court, supra,* 2 Cal.4th at p. 1265, italics in original.)

B. *The CGL Policy Does Not Cover Claims for Patent Infringement*

Applying the above analysis, the issue we must determine is whether the claim for patent infringement in the Amphenol complaint is covered as an advertising injury offense under the terms of the CGL policy. To trigger coverage, a claim must allege the insured committed one of the specifically enumerated advertising injury offenses in the policy, and the offense was committed in the course of the insured's advertising activities. (*See Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at pp. 1262-1273.)

Historically, patent infringement was not covered as advertising injury under a standard CGL policy, because patent infringement could not occur in the course of the named insured's advertising activities as a matter of law.

Under title 35 United States Code former section 271,[3] patent infringement could only occur upon the unauthorized manufacture, use or sale of the patented invention. A mere offer to sell the patented invention, without more, would not constitute infringement under the statute. Hence, numerous cases had held the second requirement, that the offense arise out of the insured's advertising activities, could not be met. (*Aetna Casualty & Surety Co.* v. *Superior Court* (1994) 19 Cal.App.4th 320, 328 [23 Cal.Rptr.2d 442]; *Everest and Jennings* v. *American Motorists Ins.* (9th Cir. 1994) 23 F.3d 226, 229; *National Union Fire Ins. Co.* v. *Siliconix Inc.* (N.D.Cal. 1989) 729 F.Supp. 77, 79.)

However, both Maxconn and Truck agree that these authorities are no longer dispositive of the question in our case. Title 35 United States Code section 271 was amended, effective January 1, 1996, to provide in pertinent part: "[W]hoever without authority makes, uses, *offers to sell* or sells any patented invention, within the United States or imports into the United States . . . during the term of the patent therefor, infringes the patent." (Italics added.) Consequently, the amendment of the statute has nullified the argument that patent infringement could not arise out of the insured's advertising activities as a matter of law.

For purposes of this appeal, Truck concedes that the Amphenol complaint alleges conduct by Maxconn that occurred in the course of its advertising activities. Indeed, the sole allegation of wrongful conduct in the complaint is that Maxconn, without authorization, offered for sale in an advertising brochure certain products that made use of a protected patented invention. However, the question remains whether any of the advertising injury offenses listed in the CGL policy are broad enough to encompass the claim of patent infringement.

Maxconn argues coverage for patent infringement may be found in the phrase "[i]nfringement of copyright, title or slogan." Specifically, Maxconn contends the word *title* may be understood as title to property or the legal ownership rights to property. A patent confers an exclusive property right in the inventor to sell, offer to sell, manufacture or use an invention. Hence, Maxconn argues that when a person is alleged to have infringed a patent, he or she is alleged to have interfered with the inventor's title to the patent. Infringement of title, therefore, may be interpreted as including infringement of patent.

We disagree. This argument was made and rejected by the United States District Court for the Eastern District of California in *Owens-Brockway*

[3]Title 35 United States Code former section 271 provided: "(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the terms of the patent therefor, infringes the patent."

*Glass* v. *International Ins. Co.* (E.D.Cal. 1995) 884 F.Supp. 363 (*Owens-Brockway*). In that case, B & H Manufacturing Co. sued Owens for patent infringement. After a jury trial, the parties negotiated a settlement, in which Owens agreed to pay B & H $22.5 million in satisfaction of a judgment, and B & H granted Owens a nonexclusive license for future use of its patents. Owens sought insurance coverage for the $22.5 million payment under the advertising injury portion of policies issued by several insurance companies.

Advertising injury was defined in those policies as slander, libel, invasion of privacy, misappropriation of advertising ideas or style of doing business and "[i]nfringement of copyright, title or slogan." Owens argued patent infringement fell within the definition of infringement of title. Relying on a dictionary, Owens asserted that *title* could refer to ownership of property such as a patent; hence, infringement of title could include infringement of a patent. Applying the analysis our Supreme Court set forth in *Bank of the West* v. *Superior Court, supra,* 2 Cal.4th 1254, the federal district court disagreed and found the argument untenable when the word *title* was examined "in the context of [its] use and in the light of common sense." (*Owens-Brockway, supra,* 884 F.Supp. at p. 367.)

The *Owens-Brockway* court reasoned: "First, and perhaps most significantly, there is the glaring absence of the word 'patent' anywhere in the policy language defining advertising injury. The language defining 'advertising injury' includes 'slander[,]' 'libel,' 'right of privacy,' 'advertising ideas,' 'style of doing business,' and 'copyright.' These are specific terms connected to well known legal categories, just as a claim of patent infringement is a distinct legal claim. But there is not a mention of 'patent' anywhere in the definition or elsewhere in the policy. Surely if coverage for patent infringement were anticipated there would be some mention of the term itself just as 'copyright' is explicitly listed." (*Owens-Brockway, supra,* 884 F.Supp. at p. 367.)

Other courts similarly have found "[i]t is . . . absurd to suggest that the phrase 'infringement of . . . title', as used in the clause 'infringement of copyright, title or slogan', encompasses patent infringement or inducement to infringe. Basic common sense dictates that if these policies covered any form of patent infringement, the word 'patent' would appear in the quoted 'infringement' clauses." (*Gencor Industries* v. *Wausau Underwriters Ins. Co.* (M.D.Fla. 1994) 857 F.Supp. 1560, 1564.) "[I]t is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of 'copyright, title or slogan,' but then include patent infringement, sub silentio, in a different provision, . . ." (*St. Paul Fire & Marine* v. *Advanced*

*Interventional* (E.D.Va. 1993) 824 F.Supp. 583, 586, italics omitted; see also *Herman Miller, Inc.* v. *Travelers Indem. Co.* (6th Cir. 1998) 162 F. 3d 454, 455; *Julian* v. *Liberty Mut. Ins. Co.* (1996) 43 Conn.App. 281, 284-285 [682 A.2d 611, 613-614].)

As further stated by the court in *Owens-Brockway*, "The term 'infringement of title' is part of a list that includes copyright and slogan. In company with these terms, 'title' apparently refers to a name, such as a name of a literary or artistic work, rather than to ownership of an invention or other thing." (*Owens-Brockway, supra,* 884 F.Supp. at p. 368.) Many other courts have reached this conclusion, when examining similarly worded insurance policies. (*Sholodge, Inc.* v. *Travelers Indem. Co. of Illinois* (6th Cir. 1999) 168 F.3d 256, 259-260 [policy defined advertising injury in part as "infringement of copyright, title, or slogan"]; *American Economy Ins. Co.* v. *Reboans, Inc.* (N.D.Cal. 1994) 900 F.Supp. 1246, 1253 [policy defined advertising injury in part as "infringement of copyright, title or slogan"]; *Atlantic Mut. Ins. Co.* v. *Brotech Corp.* (E.D.Pa. 1994) 857 F.Supp. 423, 429 [policy covered advertising injury arising out of "infringement of copyright, title or slogan"]; *Julian* v. *Liberty Mut. Ins. Co., supra,* 43 Conn.App. 281, pp. 287-288 [682 A.2d 611, 615], [policy covered advertising injury arising out of "infringement of copyright, title or slogan"].)

We find these cases persuasive and conclude that a reasonable layperson would not believe that patent infringement was a covered offense under the CGL policy at issue in this case. The advertising injury offenses contained in the Truck policy consist of common and distinct categories of actionable conduct. A claim of patent infringement is also a distinct legal claim governed by a vast body of statutory and case law. Yet, there is no mention of patent infringement anywhere in this CGL policy. The absence of any express reference to patent infringement in the policy would lead a reasonable layperson to the conclusion that patent infringement is not covered. We do not believe the drafters of the policy intended to expressly cover certain offenses such as slander, libel, invasion of privacy and copyright infringement, but chose to incorporate patent infringement by implication under some category, which on its face does not include the words *patent infringement.* (*Owens-Brockway, supra,* 884 F.Supp. 363, 367; see also *Sholodge, Inc.* v. *Travelers Indem. Co. of Illinois, supra,* 168 F.3d at p. 260.)

Furthermore, we are required to construe the term *title* in the context of its surrounding language, and considering its function in the policy. (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1265.) The drafters of this policy placed "title" between "copyright" and "slogan." A slogan is a brief, attention-getting phrase used in advertising or promotion. A copyright is the

exclusive right, granted by statute to an author or original creator to reproduce, publish and sell the matter and form of a literary, musical or artistic work or production. Neither of these terms has any apparent connection to the concept of ownership interests in property, let alone the legal right to make, use, sell or offer to sell a patented invention. Hence, while dictionaries attribute several meanings to the word *title*, including the legal ownership of property (Black's Law Dict. (5th ed. 1979) p. 1331, col. 1), when read in the context of the CGL policy, "title" can only mean a distinctive name, designation or other appellation.[4]

Maxconn relies on *Sentex Systems, Inc.* v. *Hartford Acc. & Indem. Co.* (C.D.Cal. 1995) 882 F.Supp. 930. The issue before the court was whether Hartford breached its duty to defend Sentex under a CGL policy providing coverage for advertising injury and personal injury. Sentex was sued by one of its competitors, Electronic Security Services, Inc. (ESSI), for breach of contract, interference with economic relationship and tortious interference with contract. The lawsuit alleged a former employee of ESSI had violated a noncompetition agreement by accepting employment with Sentex and using confidential information and trade secrets to promote and advertise Sentex's products to ESSI's customers. Sentex argued the allegations of the complaint fell within a reasonable construction of the policies' coverage for misappropriation of advertising ideas or style of doing business, disparagement of goods, and infringement of title. The primary holding in *Sentex* was that the claims fell within the scope of misappropriation of advertising ideas or style of doing business. However, the *Sentex* court also held there was a duty to defend under infringement of title. In a brief discussion, the court rejected Hartford's argument that the phrase *infringement of title* should be construed to mean infringement of a business name rather than infringement of an ownership or property interest. The court noted that Black's Law Dictionary defined the word *title* as both a name, mark, style or designation as well as the formal right of ownership of property. The court found no reason to construe *title* to refer only to a business name and held if the insurance company wanted to limit coverage it should have defined the phrase *infringement of title* in the policy.

*Sentex* is factually distinguishable as it is not a patent infringement case. More importantly, we find the numerous federal and state court decisions declining to construe *title* as a reference to a legal right of ownership of property to be better reasoned. (*Owens-Brockway, supra,* 884 F.Supp. at p.

[4]We recognize that there is a split of authority concerning whether the word *title* must be narrowly interpreted to apply only to the title of an artistic or literary work or may refer to any type of name or designation, including that of a business. Here, we determine only that *title* is a reference to a legally protected name, appellation or designation.

368 ["The term 'infringement of title' is part of a list that includes copyright and slogan. In company with these terms, 'title' apparently refers to a name, such as a name of a literary or artistic work, rather than to ownership of an invention or other thing."]; *Sholodge, Inc.* v. *Travelers Indem. Co. of Illinois*, *supra*, 168 F.3d at pp. 259-260 [In a service mark infringement case, the court held the term *title* was *unambiguous* and was defined as the "non-copyrightable title of a book, film, or other literary or artistic work."]; *Atlantic Mut. Ins. Co.* v. *Brotech Corp.*, *supra*, 857 F.Supp. at p. 429 [The court declined to hold infringement of title encompassed patent infringement on the ground that the term *title* referred to a distinctive name or designation, rather than to the legal concept of ownership of property.]; *Julian* v. *Liberty Mut. Ins. Co.*, *supra*, 43 Conn.App. at pp. 287-288 [682 A.2d at pp. 614-615] [Inclusion of the phrase *infringement of title* in a policy did not create a reasonable expectation of coverage for patent infringement claims, because the term *title* was a reference to a distinctive name and not to the legal concept of ownership of property.].) We believe these cases have correctly construed *title* by considering its meaning in the context of the policy as a whole. The *Sentex* court did not discuss or attempt to distinguish any of these contrary decisions in its opinion.[5]

Maxconn also relies on *Lebas Fashion Imports of USA, Inc.* v. *ITT Hartford Ins. Group* (1996) 50 Cal.App.4th 548 [59 Cal.Rptr.2d 36].[6] In *Lebas*, the Court of Appeal addressed the issue of whether trademark infringement was covered under a CGL policy as "misappropriation of advertising ideas or style of doing business." The court rejected the insurance company's argument that the word *misappropriation* in this phrase could refer only to the common law tort of misappropriation. Rather, the court held a reasonable layperson would believe the phrase meant simply " 'to take wrongfully.' " (*Id.* at p. 562.) Hence, it was logical to apply this advertising injury offense to the wrongful taking of the manner or means by which another advertises its goods or services, such as through a trademark. The court specifically declined to determine whether a trademark infringement claim also could constitute an infringement of title or slogan. (*Ibid.*)

We do not find this case persuasive. *Lebas* does not hold that patent infringement is covered as advertising injury under the terms of a CGL

[5]While *Sentex* was affirmed on appeal, the Ninth Circuit affirmed only on the ground that the lawsuit alleged claims falling within the definition of misappropriation of advertising ideas. It declined to determine whether coverage was afforded under any other provision of the policy. (*Sentex Systems, Inc.* v. *Hartford Acc. & Indem. Co.* (9th Cir. 1996) 93 F.3d 578, 581.)

[6]Maxconn finally relies on *Palmer* v. *Truck Ins. Exchange** (Cal.App.) The Supreme Court granted review of that case on December 2, 1998, S074326.

*Reporter's Note: For Supreme Court opinion, see 21 Cal.4th 1109 [90 Cal.Rptr.2d 647, 988 P.2d 568].

policy. The case involved a claim of trademark infringement, and the court did not attempt to interpret "infringement of copyright, title or slogan." (50 Cal.App.4th at p. 562)

Maxconn further argues that *Lebas* is significant because the court found coverage for trademark infringement even though the insurance policy at issue in that case did not expressly list trademark infringement as an advertising injury offense. Again, we are not persuaded. As our Supreme Court has made abundantly clear, an insurance policy is a contract "to which the ordinary rules of contractual interpretation apply." (*Bank of the West* v. *Superior Court*, *supra*, 2 Cal.4th at p. 1264.) The absence of an expression or word in a policy is clearly an appropriate consideration in the interpretation of contracts. The fact that other cases have opted not to rely on this rule does not prevent this court from making use of it.

In conclusion, we hold that "[i]nfringement of title," when read in the context of the policy in this case, may not be construed to apply to claims based on infringement of legal ownership rights to property. Hence, a reasonable layperson would not expect a claim for patent infringement to be covered under the advertising injury offenses of the CGL policy at issue in this case. Since there is no potential for coverage under the policy, we conclude that Truck had no duty to defend the allegations of the patent infringement lawsuit (*Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 47-48 [65 Cal.Rptr.2d 366, 939 P.2d 766]) and that judgment on the first cause of action for declaratory relief should have been entered in favor of Truck.

## Disposition

The judgment is reversed. Truck shall recover its costs on appeal.

Wunderlich, J., and Mihara, J., concurred.

A petition for a rehearing was denied October 15, 1999, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied December 15, 1999.