HOMEDICS, INC., a Michigan corporation, Plaintiff–Appellant,

v.

VALLEY FORGE INSURANCE COMPANY, A PENNSYLVANIA CORPORATION; Transcontinental Insurance Company, a New York corporation; Continental Insurance Company, a New Hampshire corporation; CIGNA Property and Casualty Insurance Company, a Connecticut corporation;

Ace Fire Underwriters Insurance Company (fka CIGNA Fire Underwriters Insurance Company), a Pennsylvania corporation, Defendants–Appellees.

No. 00–55306.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 4, 2002.*

Filed Jan. 9, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

David A. Gauntlett, Gauntlett & Associates, Irvine, CA, for the plaintiff-appellant.

Janelle F. Garchie, Correll, Garchie & Edwards, San Diego, CA, for the defendants-appellees.

Before CYNTHIA HOLCOMB HALL, THOMPSON, and WARDLAW, Circuit Judges.

## OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge.

The question we address here is to what extent, under California law, patent infringement claims invoke an insurers' duty to defend under a commercial general liability policy. Homedics, Inc. ("Homedics"), appeals the dismissal of its complaint against ACE Fire Underwriters Insurance Company (formerly known as CIGNA Fire

Underwriters Insurance Company) ("ACE") for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. Pro. 12(b)(6). Homedics was sued in federal district court for infringing the design patents of its competitor Nikken, Inc. ("Nikken"). Homedics claimed that Nikken's claims of patent infringement triggered ACE's duty to defend, under Homedics' commercial general liability policy. The district court disagreed and found that the policy at issue could not reasonably be read to include the Nikken claims. The district court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We agree that the underlying patent infringement suits do not invoke ACE's duty to defend and accordingly AFFIRM the district court.

### FACTS

On November 4, 1998, Nikken, Inc. filed a complaint in the district court for the Central District of California alleging that Homedics had directly infringed, contributorily infringed and induced others to infringe its patent in a certain therapeutic magnetic device, apparently used in alternative medical procedures (Nikken I). On November 30, 1998, Nikken filed for a temporary restraining order and an order preliminarily enjoining Homedics from selling its allegedly infringing products. In its brief in support of its motion, Nikken appears to allege that Homedics directly infringed its patent by offering to sell infringing products through advertising.[1] To show irreparable injury, it alleged that Homedics' sale of its products was severely hurting its business. Nikken made similar allegations in several other documents in the patent infringement actions.

On August 4, 1999, Nikken filed a second action (Nikken II) against Homedics alleging infringement of a different but related patent. This action was based on similar activity as Nikken I.

On July 20, 1999, Homedics brought an action in the Central District of California against Valley Forge Insurance Company, Transcontinental Insurance Company, Continental Insurance Company and ACE Fire Underwriters Insurance Company. The complaint sought damages for breach of contract and a declaration that Homedics was entitled to a defense of the Nikken action by the insurance companies. The case was dismissed against all defendants except ACE on October 20, 1999. On October 29, 1999, the court preliminarily found that ACE was obligated under its insurance policy to pay for the defense of Nikken I.

On November 2, 1999, Homedics brought a second action against ACE seeking a declaration that ACE was obligated to defend Homedics in Nikken II. Homedics then moved to consolidate both its cases against ACE. ACE moved the court to reconsider its October 20, 1999, order declaring that ACE was obligated to defend Homedics in Nikken I, in light of three significant cases recently decided in the courts of California. In a January 21, 2000, minute order, the district court granted Homedics' motion to consolidate its two cases against ACE. It then reversed its October 20, 1999, order and dismissed both cases for failure to state a claim, under Rule 12(b)(6). Homedics took this appeal.

At all times relevant to the Nikken I and Nikken II actions, Homedics was covered by an ACE commercial general liability policy. Homedics claims that the Nikken I

---

1. Offering to sell an infringing product is, by itself, a direct patent infringement. *See* 35 U.S.C. § 271(a).

and Nikken II actions are covered by the commercial general liability policy as the actions allege both "advertising injuries" and "personal injuries" as understood in the policy. The relevant language is laid out below:

a. Insuring Agreement

We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages.

* * *

**SECTION V—DEFINITIONS**

"Advertising injury" means injury arising out of one or more of the following offenses committed in the course of advertising your goods, products or services:

* * *

c. Misappropriation of advertising ideas or style of doing business;

* * *

"Personal injury" means injury other than "bodily injury," arising out of one or more of the following offenses:

* * *

d. Oral or written publication of material that . . .

disparages an organization's goods, products or services[.]

### STANDARD OF REVIEW

A dismissal under Rule 12(b)(6) is reviewed de novo. *See Zimmerman v. City of Oakland,* 255 F.3d 734, 737(9th Cir. 2001). Dismissal for failure to state a claim is appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,*

355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### CHOICE OF LAW

In a diversity case, a federal district court is to apply the law of the forum state for choice of law purposes. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As this is an appeal from a district court sitting in California, California choice of law rules apply.

■ The district court stated that both California and Michigan law applied to this controversy but then applied only California law as it found there was no conflict between Michigan law and California law on all material issues. Neither party argues that there is a conflict between California and Michigan law.[2] When neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law. *See Shields v. Singleton,* 15 Cal. App.4th 1611, 1621, 19 Cal.Rptr.2d 459 (1993). *Cf. Consul, Ltd. v. Solide Enterprises, Inc.,* 802 F.2d 1143, 1146 n. 3 (9th Cir.1986) (when neither party disputes California law applies, court defers to parties); *Glickman v. Collins,* 13 Cal.3d 852, 857 n. 1, 120 Cal.Rptr. 76, 533 P.2d 204 (1975) (same). We accordingly apply California law as we predict the California Supreme Court would, taking guidance from intermediate California appellate decisions. *See Arizona Elec. Power Coop., Inc. v. Berkeley,* 59 F.3d 988, 991(9th Cir. 1995).

### DISCUSSION

■ The precise issue in the instant appeal is not whether ACE would have to

---

**2.** While ACE argues that Michigan law should apply "to the extent that there is a conflict" between California and Michigan law, it never identifies any conflict between the law of the two states on any issue in this case. It therefore argues almost exclusively under California law.

pay for any money damages levied against Homedics as a result of the underlying patent infringement actions. The issue here is whether ACE must pay for *the defense* of these actions. It is well settled that, in insurance contracts, "the duty to defend is broader than the duty to indemnify." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993). An insurer is under a duty to defend any "suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (italics in original).

Homedics points to two portions of its commercial general liability policy with ACE to support its argument that Nikken is seeking damages that are potentially within the coverage of its policy. First, it claims that Nikken's patent infringement claims fall within the coverage for "advertising injury ... arising out of ... misappropriation of advertising ideas or style of doing business." Second, it claims that Nikken's patent infringement claims fall within coverage for "personal injury ... arising out of ... oral or written publication of material that ... disparages an organization's goods, products or services."

### Advertising Injury

■ The question of to what extent, if any, language in commercial general liability policies insuring against "advertising injuries" covers patent infringement claims has been heavily litigated in recent years. *See generally* O STRAGER, BARRY R. & THOMAS R. NEWMAN, HORNBOOK ON INSURANCE COVERAGE DISPUTES § 7.04[b][4] (11th ed.2002). For a court to find a covered "advertising injury" it must find that: (1) there is a causal connection between allegations in the third party complaint and the insured's advertising activities; and (2) the allegations in the third party complaint fit into one of the enumerated offenses in the commercial general liability policy that

could be considered advertising injuries. *See Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1273–1274, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992); *Mez Indust. Inc. v. Pacific Nat'l Ins. Co.*, 76 Cal.App.4th 856, 865, 90 Cal.Rptr.2d 721 (1999).

All of our previous opinions that have addressed this issue reject that insurers have a duty to defend patent infringement suits on the basis of advertising injury clauses in commercial general liability policies. *See, e.g., Simply Fresh Fruit, Inc. v. P&C Services, Inc.*, 94 F.3d 1219, 1222–1223(9th Cir.1996) ("[A]s a matter of law, patent infringement cannot occur in the course of an insured's advertising activities."); *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 229 (9th Cir.1994). The foundational basis for the holdings in these opinions—specifically that advertising cannot give rise to a cause of action for direct patent infringement—has been invalidated by recent changes in patent law.

In 1994, Congress amended the Patent Act to include "offers to sell" as conduct which could constitute a direct patent infringement, and this amendment became effective in 1996. *See* 35 U.S.C. § 271(a) and accompanying Historical and Statutory Notes re 1994 Amendments and Effective Date of 1994 Amendments. With the addition of "offers to sell" to the patent statute, it is no longer clear that advertising can never give rise to a direct patent infringement action. *See, e.g., HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1309 n. 6 (Fed.Cir.1999) (advertisements may be "offers to sell" and, thus, give rise to direct patent infringement claim); *Maxconn Inc. v. Truck Ins. Exch.*, 74 Cal.App.4th 1267, 1274, 88 Cal.Rptr.2d 750 (1999) ("[T]he amendment of the [patent] statute has nullified the argument that patent infringement could not arise out of the insured's advertising activities as a matter of law.").

ACE concedes that Homedics' allegations in its complaint are sufficient, at this stage of the litigation, with regard to a causal connection. The only issue before this court, with regards to advertising injury, is whether Homedics can establish that Nikken's complaints made allegations that fit into an enumerated offense. We hold that it cannot.

■ Homedics contends that the allegations in the Nikken complaints can reasonably be read to include the advertising injury of "misappropriation of advertising idea or style of doing business." [3] When interpreting insurance contracts, courts must first determine if a proposed construction is consistent with the insured's "objectively reasonable expectations." *Bank of the West*, 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545. If defense of the suit is consistent with the insured's objectively reasonable expectations then the language will be construed against the insurer and it will be required to defend the suit. *Id.*

We must determine whether Homedics' contention that the Nikken patent infringement claims fit under the offense of "misappropriation of advertising ideas or style of doing business" is consistent with Homedics' objectively reasonable expectations. This language was interpreted by the California Court of Appeal in *Mez Indus. Inc. v. Pacific Nat'l Ins. Co.*, 76 Cal.App.4th 856, 90 Cal.Rptr.2d 721 (1999). In *Mez*, the plaintiff was being sued for inducement of patent infringement [4] based upon allegations that Mez's sale of certain components used for the connection of joints in airflow conduction systems caused others to use those component parts in a manner that infringed a competitor's patents. *See id.* at 861–862, 90 Cal.Rptr.2d 721. Mez sought a declaratory judgment that its insurer was obligated to defend it in the federal patent action. *See id.* at 863, 90 Cal.Rptr.2d 721. The court first found that Mez's inducement of patent infringement may have occurred during the course of its advertising activities. *See id.* at 866–867, 90 Cal.Rptr.2d 721. The court then addressed whether allegations of inducement of patent infringement can fit under the enumerated offense of "misappropriation of an advertising idea or style of doing business." *See id.* at 869–873, 90 Cal.Rptr.2d 721. Mez argued that the misappropriation offense was ambiguous and should be interpreted against the insurer to include a claim of inducement of patent infringement. *See id.* 868, 90 Cal. Rptr.2d 721. To determine whether there was an ambiguity, the court examined whether the claim that inducement of patent infringement was covered by the language "is consistent with the insured's *objectively reasonable expectations.*" *Id.* (italics in original). The court found that it was not. "[T]he policy terms 'misappropriation of an advertising idea or style of doing business' ... simply could not be reasonably read by a layperson to include either patent infringement or the inducement thereof." *Id.* at 872, 90 Cal.Rptr.2d 721. The court noted that the patents at issue "did not involve any process or invention which could reasonably be consid-

---

3. In this court, Homedics abandoned the argument it made below that the Nikken complaint could fit under the advertising injury of "infringement of ... title." *Recent* California cases have foreclosed such an argument. *See Palmer v. Truck Ins. Exch.* 21 Cal.4th 1109, 1116, 90 Cal.Rptr.2d 647, 988 P.2d 568 (1999); *Maxconn*, 74 Cal.App.4th at 1271, 88 Cal.Rptr.2d 750.

4. Inducement of patent infringement is a separate cause of action from direct patent infringement. *See* 35 U.S.C. § 271(b). Liability for inducement occurs when one actively aids and abets another's direct infringement of the patent. *See* DONALDS. CHISUM, CHISUM ON PATENTS § 17.04 (2002).

ered an 'advertising idea' or 'a style of doing business.'" *Id.*

■ Similar to Mez, the underlying Nikken actions at issue here do not allege violation of a method patent involving advertising ideas or a style of doing business. Like the allegations that Mez was inducing infringement of a design patent in airflow conduction systems, the Nikken actions allege violation of a design patent for certain therapeutic magnetic devices. Homedics attempts to distinguish *Mez* on the ground that the Court of Appeal was dealing with an inducement of patent infringement action, not a direct infringement action. This is true but Homedics does not offer any reasons for why this should make a difference. Inducement of patent infringement is merely the offense of aiding others to directly infringe. The same analysis should apply to whether direct infringement can be cognizable as a "misappropriation of an advertising idea or style of doing business." Furthermore, the *Mez* court did not see any meaningful difference between direct infringement and inducement as it relied principally on federal district court cases construing the misappropriation language in the context of direct patent infringement. *See id.* at 871–872, 90 Cal.Rptr.2d 721. Finally, as noted above, the court said that the misappropriation language could not "be reasonably read by a layperson to include either *patent infringement* or the inducement thereof." *Id.* (emphasis added). Clearly, the language referring to direct patent infringement is dicta but Homedics offers no

reasoned argument for this court to depart from it and we can think of none. Furthermore, in diversity cases, we are generally bound by the dicta of state courts. *See Rocky Mountain Fire & Casualty Co. v. Dairyland Ins. Co.*, 452 F.2d 603, 603–604 (9th Cir.1971).

Homedics further attempts to distinguish *Mez* by pointing out that it involved claims that arose before the 1996 amendment to the patent statute adding the term "offers to sell."[5] This is not relevant. As noted above, the language adding "offers to sell" significantly changes the analysis of whether there is a causal connection between advertising activities and direct infringement. There is no reason why it should change the analysis of whether infringement can be cognizable as a "misappropriation of an advertising idea or style of doing business."

We therefore hold that the terms "misappropriation of an advertising idea or style of doing business" cannot be read in an objectively reasonable manner to include the underlying Nikken actions.

### Personal Injury

■ Homedics' next argument is that ACE has a duty to defend because Nikken's patent infringement claims potentially fall under the clause in the commercial general liability policy for "personal injuries ... arising out of ... oral or written publication of material that ... disparages an organization's goods, products or services." The issue here is also whether

---

**5.** Contrary to the contentions of appellant, the "offer to sell" language does not create a new type of patent infringement action. It merely adds to the behavior that can be cognizable as a direct patent infringement. *See generally 3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1378 (Fed.Cir.1998) (noting that offer to sell language effects a change in direct infringement action); *Hoechst–Roussel Pharms. v. Lehman,* 109 F.3d 756, 759

(Fed.Cir.1997) ("Direct infringement consists of ... offering to sell ... invention defined by the claims of a patent, without the authority of the patent owner."); *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.,* 130 F.Supp.2d 1152, 1167 (C.D.Cal.2001) ("An 'offer to sell' as a basis for liability was only added to the patent statutes effective January 1, 1996, and so is a relatively new type of direct infringement.").

such a construction would be consistent with Homedics' objectively reasonable expectations. *See Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545.

One cannot read Nikken's complaints and reasonably conclude that there are allegations that Homedics was disparaging its goods. Essentially, Nikken's complaints only allege that Homedics imitated its product, thereby infringing its patent. It does not follow that because an entity imitated the design of a product, it *is,* therefore, disparaging it. In point of fact, it's quite the opposite—as has been oft said: imitation is the highest form of flattery.

We furthermore find the opinion in *U.S. Test, Inc. v. NDE Environmental Corp.,* 196 F.3d 1376 (Fed.Cir.1999) to be especially persuasive. U.S. Test was sued by a competitor for patent infringement. U.S. Test then made its insurance company, UCIC, a third party defendant, claiming that UCIC had an obligation to defend the suit. *See id.* at 1377–1378. U.S. Test claimed that the "personal injury" language in its policy with UCIC obligated UCIC to defend it. The language was exactly the same as the language at issue in this case. *See id.* at 1378. Similar to the claims of Homedics here, U.S. Test argued that since its competitor was alleging that U.S. Test had claimed that its patents did not infringe its competitor's patents, the competitor's patent infringement claim could be cognizable as a claim disparaging another's "goods." *See id.* at 1382. The Federal Circuit held that "a patent is a right to exclude, not a 'good.'" *Id.* Alternatively, the Federal Circuit held that a simple claim of patent infringement cannot be considered a disparagement of a patent. "U.S. Test was not disparaging the ... patents, but was merely asserting that its own products did not infringe those patents." *Id.* at 1383. The Federal Circuit was technically interpreting Louisiana law. *See id.* at 1379. However, it was not relying on any specialized rule of Louisiana law. It was relying on its general knowledge of the nature of the property rights inherent in a patent and on the nature of a patent infringement action. We find Federal Circuit's view especially persuasive on this subject, as it has the primary appellate responsibility in patent law. *See* 28 U.S.C. § 1295(a)(1).

Finally, we are cognizant of the following statement by the California Court of Appeal:

> Basic common sense dictates that if these policies covered any form of patent infringement, the word patent would appear in the quoted infringement clauses.... A claim of patent infringement is also a distinct legal claim governed by a vast body of statutory and case law. Yet, there is no mention of patent infringement anywhere in the [commercial general liability] policy. The absence of any express reference to patent infringement in the policy would lead a reasonable layperson to the conclusion that patent infringement is not covered.

*Maxconn, Inc. v. Truck Ins. Exchange,* 74 Cal.App.4th, 1267, 1275–1276, 88 Cal. Rptr.2d 750 (1999) (internal citations and quotations omitted). This broad language is dicta but it was made after an exhaustive review of a similar commercial general liability policy and a claim by an insured that a patent infringement suit was covered by that policy. As previously noted, a "federal court exercising diversity jurisdiction is bound to follow the considered dicta as well as the holdings of state court decisions." *Rocky Mountain Fire & Casualty Co.,* 452 F.2d 603 at 603–604.

We conclude that the patent infringement at issue in the Nikken actions cannot be understood as a disparagement of "an organization's goods, products or services."

CONCLUSION

Homedics can prove no set of facts to support its claim that the insurance contract at issue can be reasonably read to require ACE to defend Homedics against Nikken's claims of patent infringement. Therefore, Homedics has failed to state a claim upon which relief can be granted. *See* Fed R. Civ. Pro. 12(b)(6).

The district court's order dismissing Homedics' complaint is AFFIRMED.