[No. B121209: Second Dist., Div. Three. Dec. 3, 1999.]

MEZ INDUSTRIES, INC., Plaintiff and Appellant, v.
PACIFIC NATIONAL INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Gauntlett & Associates and David A. Gauntlett for Plaintiff and Appellant.

Troop, Steuber, Pasich, Reddick & Tobey, Kirk A. Pasich, · Lori M. Yankelevits; Mayer, Brown & Platt, William J. Robinson, Victor de Gyarfas; Sheldon & Mak, Surjit P. Soni and William J. Brutocao as Amici Curiae on behalf of Plaintiff and Appellant and upon the request of the Court of Appeal.

Murchison & Cumming, Edmund G. Farrell and Bryan M. Weiss for Defendant and Respondent.

Greines, Martin, Stein & Richland, Irving H. Greines, Marc J. Poster, Robert A. Olson and Edward L. Xanders for Truck Insurance Exchange as Amici Curiae on behalf of Defendant and Respondent and upon the request of the Court of Appeal.

Sonnenschein, Nath & Rosenthal, Paul E. B. Glad and Michael A. Barnes for National Association of Independent Insurers, American Insurance Association, Allstate Insurance Company and Fireman's Fund Insurance Company as Amici Curiae on behalf of Defendant and Respondent and upon the request of the Court of Appeal.

Chapman, Popik & White, Susan M. Popik and Katherine O'Neal as Amici Curiae on behalf of Defendant and Respondent and upon the request of the Court of Appeal.

**OPINION**

**CROSKEY, J.**—This case presents the question of whether a liability insurer providing coverage for "advertising injury" is required to defend its

insured in an action charging the insured with *inducement* of patent infringement. When the respondent, Pacific National Insurance Company (Pacific) refused to provide such a defense to the appellant, Mez Industries, Inc. (Mez), Mez filed this action for declaratory relief and breach of contract. The trial court sustained Pacific's demurrer without leave to amend and thereafter entered a judgment of dismissal.[1]

Because we conclude that the advertising injury provisions of Pacific's policy did not provide coverage to Mez for inducement of patent infringement and, in any event, such coverage would have been precluded by Insurance Code section 533,[2] we conclude that no potential for coverage existed as a matter of law and thus no duty to defend ever arose. The trial court ruled correctly and we therefore affirm.

## Factual and Procedural Background[3]

Mez is engaged in the business of manufacturing, distributing and selling components used for the connection of joints in airflow conduction systems (such as central heating and air conditioning systems). It manufactures these components and advertises them for sale through wholesalers to mechanical and sheet metal construction contractors who use the components to create duct systems in various building projects throughout the United States.

On April 10, 1995, Ductmate Industries, Inc. (Ductmate) filed a complaint against Mez in the United States District Court for the Northern District of Ohio in an action styled as *Ductmate Industries, Inc.* v. *Mez Industries, Inc.*, No. 4:95CV00815 (hereinafter, the Ductmate action). Stripped to its relevant essentials, the complaint in that action alleged that Mez had induced its customers to infringe at least four of Ductmate's patents for certain "flange-type duct joint assembl[ies] and seal arrangement[s] [therefor]."[4]

---

[1]Following oral argument, we invited a number of amicus curiae briefs from interested parties (selected by the parties and ourselves). These briefs have been gratefully received and fully considered.

[2]Insurance Code section 533 (hereinafter section 533) provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

[3]As Pacific's demurrer to Mez's complaint was sustained without leave to amend, we accept the facts alleged in that pleading as true. The facts we recite are based on those allegations and, for our purposes, are not in dispute.

[4]Ductmate also alleged other misconduct by Mez including active direct infringement of Ductmate's patents. However, on appeal, the only alleged conduct which Mez claims justifies a defense of the Ductmate action by Pacific are the allegations that Mez induced others to infringe Ductmate's patents. Mez made this clear in the initial paragraph of its opening brief: "Mez seeks a determination that Pacific owes it a duty of defense for claims of *inducing*

Ductmate's alleged claims of inducement of patent infringement pursuant to 35 United States Code section 271(b) were not based upon Mez's manufacture of the individual component parts for a duct system joint assembly, but rather upon those activities of Mez that caused or encouraged *others* to take those component parts and put them together in a way which infringed Ductmate's patents. Those activities by Mez necessarily involved its *advertising* activities, which encouraged and solicited others to buy Mez's products and assemble them in a particular manner. For example, Ductmate featured in its own advertising its "Slide-On Connectors" for use in putting together a conduction system and provided step-by-step instructions for assembly and installation. Mez has distributed a variety of advertising brochures, mailers, and promotional booklets depicting HVAC duct joint assemblies which graphically illustrated how Mez's corners, flanges and seals could work as substitutes for Ductmate's Slide-On-Connectors corner units and related products. In addition, Mez's assembly and installation instructions produced the same HVAC ducts as depicted in Ductmate's advertising materials.

At least for our purposes, there is no contention that Mez's products themselves infringed upon any of Ductmate's patents. (See fn. 4, *ante.*) Rather, the relevant essence of the Ductmate action is that Mez's advertising, marketing and sales promotion activities solicited, encouraged and induced engineers, contractors, distributors and builders to purchase Mez's products and to combine and assemble them in a manner which did infringe Ductmate's patents.

Mez tendered defense of the Ductmate action to Pacific on or about July 6, 1995. Mez asserted that it was entitled to coverage and a defense of the action under the "Advertising Injury" section of Pacific's liability policy. As relevant to the issues before us, that policy promised both indemnity and a defense for an injury caused by one or both of the following two "offenses" committed *in the course of advertising* goods, products or services in the coverage territory during the policy period:

(1) "Misappropriation of advertising ideas or style of doing business," and

(2) "Infringement of copyright, title or slogan."[5]

On or about November 22, 1995, after a review of the matter, Pacific denied coverage and refused to provide a defense. On June 4, 1997, Mez

*patent infringement* under its 'advertising injury' coverage for [1] 'misappropriation of advertising ideas or style of doing business' or [2] 'infringement of title.' " (Italics added.) As will become apparent, such a limitation on its scope of coverage argument was necessary to satisfy the requirement that the alleged misconduct for which a defense was sought had an *advertising* nexus.

[5]The specific provisions of Pacific's policy here at issue are as follows:

filed this action alleging essentially the forgoing facts and asserting that Pacific had wrongfully denied coverage. Mez alleged that it was entitled to a defense and sought a declaratory judgment for Pacific's breach of its contractual obligations under the policy.[6]

Pacific attacked this complaint by demurrer, asserting that, as a matter of law, there could be no potential for coverage and thus no duty to defend. Pacific argued that the claim of inducing patent infringement is simply not a covered offense under the advertising provisions of the policy and, in any event, coverage for such an act would be precluded under section 533. The trial court agreed and, on January 9, 1998, sustained Pacific's demurrer without leave to amend.[7] A judgment of dismissal was thereafter entered on January 27, 1998. Mez has filed this timely appeal.

"Coverage B - Personal and Advertising Injury Liability
"1. Insuring Agreement
"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'advertising injury' to which this coverage part applies. We will have the right and duty to defend any 'suit' seeking those damages.
"b. This insurance applies to:
"(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(2) 'Advertising injury' caused by an offense *committed in the course of advertising* your goods, products, or services; but only if the offense was committed in the 'coverage territory' during the policy period."
Section 5 of the Primary Policy provides in pertinent part:
"1. 'Advertising Injury' means injury arising out of one or more of the following offenses:
"(a) Oral or written publication of material that slanders or libels the person or organization or disparages a person's or organization's goods, products or services;
"(b) Oral or written publication of material that violates a person's right of privacy;
"(c) Misappropriation of advertising ideas or style of doing business; or
"(d) *Infringement* of copyright, *title* or slogan." (Italics added.)
[6]Mez filed a first amended complaint on September 2, 1997. That is the pleading that is before us.
[7]The trial court's detailed order was very clear as to its reasoning process: "Mez contends that Pacific breached its contract by failing to provide it with a defense against Ductmate's claims of patent infringement and inducement of patent infringement. Mez contends that it is covered under the advertising injury provision of its policy with respect to two enumerated offenses: 'misappropriation of advertising ideas or style of doing business' and 'infringement of title.' The Court concludes that Mez is not covered. [¶] Pursuant to *Aetna Casualty & Surety Co.* v. *Superior Court* (1993) 19 Cal.App.4th 320 [23 Cal.Rptr.2d 442] it is clear that patent infringement does not arise during the course of advertising activities. Therefore, Ductmate's patent infringement claim was not covered. Although Aetna and cases cited by Mez suggest that Mez's alleged inducement of patent infringement is advertising activity, inducement of patent infringement is not an enumerated offense under the policy. Mez argues that the Court must interpret the policy to include 'piracy,' an enumerated offense under a superseded ISO form. A Court has a duty to determine an insured's objectively reasonable expectation as a matter of law. This determination, however, is a method of resolving ambiguities in a policy. *Titan Corp.* v. *Aetna Casualty & Surety* (1994) 22 Cal.App.[4th] 457, 469 [27 Cal.Rptr.2d 476]. There is no ambiguity in the policy with respect to 'piracy.' That word does not appear in the policy and the Court cannot read 'piracy' into it. *Owens-*

## Contentions of the Parties

Mez contends that there is at least a potential for coverage under the Pacific policy. It argues that the offenses of (1) "misappropriation of advertising ideas or style of doing business" and (2) "infringement of copyright, title or slogan" are both ambiguous and each could reasonably include the alleged inducement of patent infringement. Therefore, Mez concludes, Pacific had a duty to provide Mez with a defense to the Ductmate action and the trial court erred when it sustained Pacific's demurrer and entered a judgment of dismissal.

Pacific rejects these contentions and reasserts the same basic arguments which the trial court accepted and upon which it based its ruling.

## Discussion

### 1. *Standard of Review*

■ A demurrer tests the sufficiency of the allegations in a complaint as a matter of law. (*Pacifica Homeowners' Assn.* v. *Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1151 [224 Cal.Rptr. 380].) We review the sufficiency of the challenged complaint de novo. (*Saunders* v. *Superior Court* (1994) 27 Cal.App.4th 832, 837 [33 Cal.Rptr.2d 438].) We accept as true the properly pleaded allegations of fact in the complaint, but not the contentions, deductions or conclusions of fact or law. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We also accept as true facts which may be inferred from those expressly alleged. (*Marshall* v. *Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].) We consider matters which may be judicially noticed, and we "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.) We do not concern ourselves with whether the plaintiff will be able to prove the facts it alleges in its complaint. (*Parsons* v. *Tickner* (1995) 31 Cal.App.4th 1513, 1521 [37 Cal.Rptr.2d 810].) The judgment or order of dismissal must be affirmed if any of the grounds for demurrer raised by the defendant is well taken and disposes of the complaint. (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

*Brockway Glass Container, Inc.* v. *International Systems* (E.D.Cal. 1995) 884 F.Supp. 363 states that 'misappropriation of style of doing business' and infringement of title' do not include patent infringement (in which inducement is included). (*Id.* at p. 367.) Finally, pursuant to *Aetna* and *Intex Plastic Sales Co.* v. *United National Insurance Co.* (9th Cir. 1994) 23 F.3d 254, inducement of patent infringement requires specific intent and coverage for such an act is barred by Insurance Code section 533."

## 2. *Advertising Injury Coverage Cannot Be Established in This Case*

■ Advertising injury liability has become part of the coverage offered in commercial general liability (CGL) policies only recently. Prior to 1986, this coverage was offered by a separate broad form endorsement for which an additional premium was charged. It is important to understand that this coverage is entirely distinct from the bodily injury and property damage coverage which has long been the standard fare of CGL policies.

Bodily injury and property damage coverage is dependent upon an "accident" or "occurrence" and coverage is not triggered until an injury or damage results. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 1999) ¶¶ 7:1001 to 7:1003, pp. 7C-1 to 7C-3.) Advertising injury, on the other hand, applies to injury resulting from the commission of certain specified offenses. (*Ibid.*) It does *not* depend upon an accident, but may be based (and often is) on the *intentional* acts of the insured. Thus, even certain intentional torts may be covered (subject, of course, to the statutory exclusion under section 533, which we discuss below). (Croskey et al., at ¶¶ 7:1002.1 to 7:1002.2, 7:1004 to 7:1004.2, pp. 7C-2, 7C-4.) The event triggering coverage is the commission of the specified offense during the policy period, provided that it is committed in the course of advertising goods, products or services. (*Id.* at ¶¶ 7:1008 to 7:1009, p. 7C-5.)

### a. *There Is No Coverage for a Patent Infringement Claim*

The specified "offenses" with which we are concerned here are the (1) "misappropriation of an advertising idea or style of doing business" and (2) "infringement of copyright, title or slogan." If Mez's alleged inducement of the infringement of Ductmate's patents fits either of these two offenses, and was committed in the course of Mez's advertisement of its own products, then coverage would be available. It is doubtless because of this latter requirement that Mez does not argue on appeal that coverage is provided for the direct patent infringement which is also alleged in the Ductmate action. Under *relevant* applicable federal law (i.e., prior to the 1996 effective date of the 1994 amendment), patent infringement occurs when a party makes, uses or sells a product incorporating a patented invention. (35 U.S.C. § 271(a).)[8] Where the claim in the underlying action is that an insured directly infringed

---

[8]We note that in 1994, Congress amended the Patent Act to include "offers to sell" (e.g., advertising) as conduct which could constitute patent infringement, and this amendment became effective in 1996. (35 U.S.C. § 271(a), see also Historical and Statutory Notes re 1994 Amendments and "Effective Date of 1994 Amendments, 35 U.S.C.A. (1999 supp.) foll. § 271, pp. 89-90).) At least one court has concluded that this amendment "indicates that the insured could have an objectively reasonable expectation that it could be prosecuted for advertising injury in a claim for patent infringement." (*Everett Associates* v. *Transcontinental Ins. Co.*

the patents of another by the *sale* of its products, rather than by the form of the insured's advertisements, then the patent infringing act did not occur in the course of the insured's advertising activities within the meaning of the relevant policy language. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1275 [10 Cal.Rptr.2d 538, 833 P.2d 545].) An advertising injury must have a causal connection with the insured's advertising activities before there can be coverage. (*Id.* at p. 1277.) As there is no contention here that Mez directly violated any of Ductmate's patents by its advertising activities, Mez cannot claim coverage for the allegations of direct patent infringement. (See *Simply Fresh Fruit, Inc.* v. *Continental Ins. Co.* (9th Cir. 1996) 94 F.3d 1219, 1222-1223; *Everest and Jennings* v. *American Motorists Ins.* (9th Cir. 1994) 23 F.3d 226, 228-230; *Iolab Corp.* v. *Seaboard Sur. Co.* (9th Cir. 1994) 15 F.3d 1500, 1505-1506; see also *Gitano Group, Inc.* v. *Kemper Group* (1994) 26 Cal.App.4th 49, 57-60 [31 Cal.Rptr.2d 271].) Thus, Mez has limited its coverage argument to the allegations that *inducement* of infringement is alleged by Ductmate and that such allegation is enough to justify coverage.

### b. *There Is No Coverage for an Inducement of Patent Infringement Claim*

Federal law also proscribes *inducing* patent infringement. (35 U.S.C. 271(b).) This section provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." However, the alleged infringer must be shown to have *knowingly* induced infringement. (*Water Technologies Corp.* v. *Calco, Ltd.* (Fed. Cir. 1988) 850 F.2d 660, 668.) "It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements. [Citations.]" (*Manville Sales Corp.* v. *Paramount Systems, Inc.* (Fed. Cir. 1990) 917 F.2d 544, 553, italics omitted.)

Unlike direct infringement, it is possible for inducement to infringe to occur during the course of advertising activities; indeed, advertising has

---

(N.D.Cal. 1999) 57 F.Supp.2d 874, 882.) Assuming arguendo that the *Everett* court reached a proper result, a matter on which we express no opinion, this statutory change would appear to have nullified the argument that direct patent infringement could not arise out of an insured's advertising activities. However, the amendment has no impact on the issue before us because the alleged misconduct of Mez occurred prior to 1996 and Mez makes no claim for coverage based upon Ductmate's allegations of patent infringement. Moreover, even though a direct patent infringement might now be committed during the course of an advertising activity, such circumstance does not help us to resolve the question as to whether patent infringement itself will fall within one of the covered "offenses."

been found to be a sufficient basis for a claim of inducement.[9] (*U.S. Fidelity & Guar.* v. *Star Technologies* (D.Ore. 1996) 935 F.Supp. 1110, 1116; *New Hampshire Ins.* v. *R.L. Chaides Const.* (N.D.Cal. 1994) 847 F.Supp. 1452, 1458.) However, liability can only be found if the inducement is "active"; that is, a party must "purposefully cause, urge or encourage another to infringe." (*Honeywell, Inc.* v. *Metz Apparatewerke* (7th Cir. 1975) 509 F.2d 1137, 1142.) Something *more* is required than simply the advertising of a product for sale. "In addition, the advertisement must instruct or explain to the purchaser exactly how to recreate or reassemble the product into one that infringes a patent." (*U.S. Fidelity & Guar.* v. *Star Technologies, supra,* 935 F.Supp. at p. 1116; see also *Fromberg, Inc.* v. *Thornhill* (5th Cir. 1963) 315 F.2d 407, 412 [defendant advertised and personally demonstrated to purchasers how his device could be inserted into another object to recreate a patented product].)

Having in mind these general principles, we address the two questions which are raised by the parties' briefs as to whether coverage was provided for such conduct under Pacific's policy: (1) is the inducement of patent infringement an advertising offense within the meaning of the policy and, in any event, (2) is coverage under the policy for such an act barred by section 533?[10]

### (1) *Inducing Patent Infringement Does Not Constitute an Advertising Injury Offense*

 Pacific argues that neither direct patent infringement nor the inducement thereof is included within either the (1) "misappropriation of an advertising idea or style of doing business" or (2) "infringement of copyright, title or slogan." Mez responds that those terms are ambiguous, as they are subject to at least one reasonable interpretation which would include patent infringement or at least its inducement.

 It is now settled that the interpretation of an insurance policy is no different than the interpretation of contracts generally. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-823 [274 Cal.Rptr. 820, 799 P.2d 1253].) The mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (Civ. Code, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in

---

[9]As it seems clear, at least from Mez's complaint, that the alleged acts of inducement were committed in the course of Mez's advertising and marketing of its products, we assume, *for purposes of our decision,* that Mez has satisfied the "in the course of advertising" element required under Pacific's policy.

[10]As indicated in footnote 1, *ante,* we have also received and considered the views of a number of amici curiae on these issues.

their "ordinary and popular sense," unless "used by the parties in a technical sense" or "a special meaning is given to them by usage," will control judicial interpretation. (Civ. Code, §§ 1638, 1644.)

On the other hand, " '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' . . . This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.' . . . Only if this rule does not resolve the ambiguity do we then resolve it against the insurer. . . . [¶] In summary, a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. . . . This is because '*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract*.' " (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at pp. 1264-1265, italics in original, citations omitted.)

The *Bank of the West* court made it clear that it was no longer enough to find an abstract ambiguity or a meaning for a disputed word or phrase which was simply "semantically permissible."[11] In order to conclude that an ambiguity exists which will be construed against an insurer, it is necessary first to determine whether the coverage under the policy, which would result from such a construction, is consistent with the insured's *objectively reasonable expectations*. (*Cooper Companies* v. *TransContinental Ins. Co.* (1995) 31 Cal.App.4th 1094, 1106 [37 Cal.Rptr.2d 508].) In order to do this, the disputed policy language must be examined *in context* with regard to its intended function in the policy. (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1265.) This requires a consideration of the policy as a whole,

---

[11]Prior to the decision in *AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at page 809, the rule of construction was much more liberal. If *any* ambiguity existed in an insurer-drafted policy, it was to be construed in favor of the insured, and an ambiguity could be demonstrated if the meaning of the disputed term or phrase as advocated by the insured was "semantically permissible." (See, e.g., *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881 [221 Cal.Rptr. 509, 710 P.2d 309]; *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764]; *Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412-413 [149 Cal.Rptr. 292, 583 P.2d 1335]; *Harris* v. *Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861]; *Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269, fn. 3 [54 Cal.Rptr. 104, 419 P.2d 168].) Since *AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d 807, and *Bank of the West* v. *Superior Court, supra,* 2 Cal.4th 1254, the emphasis is on *context* and the *objectively* reasonable expectations of the insured.

the circumstances of the case in which the claim arises, and "common sense." (*Id.* at p. 1276.) Such an evaluation of an insured's *objectively* reasonable expectations under that criteria may result in a restriction of coverage rather than an expansion. (*Sequoia Ins. Co. v. Royal Ins. Co. of America* (9th Cir. 1992) 971 F.2d 1385, 1390 [applying California law].) An insured will not be able successfully to claim coverage where a reasonable person would not expect it. (See, e.g., *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 41-43 [36 Cal.Rptr.2d 100, 884 P.2d 1048]; *Farmers Ins. Exchange v. Knopp* (1996) 50 Cal.App.4th 1415, 1423 [58 Cal.Rptr.2d 331]; *A. C. Label Co. v. Transamerica Ins. Co.* (1996) 48 Cal.App.4th 1188, 1194 [56 Cal.Rptr.2d 207]; *Cooper Companies v. TransContinental Ins. Co., supra,* 31 Cal.App.4th at p. 1104.)

We recently had occasion to apply these principles in the context of a *trademark* infringement dispute. In *Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group* (1996) 50 Cal.App.4th 548 [59 Cal.Rptr.2d 36] (*Lebas*), we concluded that the advertising offense "misappropriation of an advertising idea or style of doing business" was indeed ambiguous and, *in the context of the facts of that case,* the insured could have objectively reasonable expectations of coverage. However, the scope of our conclusion was necessarily confined by the specific circumstances in which it was reached. In *Lebas,* we were dealing with an insured that allegedly had appropriated the proprietary mark and name of an international distributor of high fashion perfume and cosmetics, and that was utilizing such mark and name in the labeling, marketing and advertising of its own line of clothing. We noted that, contrary to the fundamental purposes of a *patent,* one of the three fundamental purposes of a *trademark* was to advertise the products of the trademark holder and that an infringement of the trademark frequently occurred in the course of advertising. (*Id.* at pp. 557.)[12] Moreover, a trademark often represented the manner and means of such advertising, or at the least was an integral part thereof, and as such could easily and reasonably be considered to fall within the definition of an "advertising idea" and be considered a part of the trademark holder's "style of doing business." (*Id.* at pp. 557, 564-565.) Thus, an insurer's promise to provide coverage for the insured's misappropriation of either an "advertising idea" or a "style of doing business" could reasonably be construed by a layperson insured to include a trademark infringement. (*Id.* at p. 565.) This was particularly true

---

[12]It seems clear that the direct infringement of a patent, at least prior to the "offers to sell" amendment to the Patent Act (35 U.S.C. § 271(a)), could not result from advertising, and thus the required causal nexus between the insured's advertising activity and the claimant's injury could not be established. (See, e.g., *Gitano Group, Inc. v. Kemper Group, supra,* 26 Cal.App.4th at p. 60; *Everest and Jennings v. American Motorists Ins., supra,* 23 F.3d at p. 229; *Microtec Research v. Nationwide Mut. Ins. Co.* (9th Cir. 1994) 40 F.3d 968, 971; *Simply Fresh Fruit, Inc. v. Continental Ins. Co., supra,* 94 F.3d at p. 1222.)

in light of the fact that, in *Lebas*, the record reflected that these new policy definitions of advertising injury offenses (which had replaced prior offenses described as "piracy" and "unfair competition") were accompanied by the *deletion* of an exclusion for trademark infringement that had been a part of the prior policy. (*Id.* at pp. 565-566.)[13]

 Understandably, Mez asks us to apply the same reasoning in this case and to find the policy's misappropriation offense ambiguous. However, we cannot go that far. In *Lebas,* we did not find that clause to be ambiguous in the abstract. We only reached the conclusion we did in the *context* of (1) the language of the policy, (2) the general circumstances of that particular case and (3) "common sense." (See *Old Republic Ins. Co.* v. *Superior Court* (1998) 66 Cal.App.4th 128, 143 [77 Cal.Rptr.2d 642]; disapproved on other grounds in *Vandenberg* v. *Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13 [88 Cal.Rptr.2d 366, 982 P.2d 229].) We examined the policy language in that context with regard to its intended function in the policy and attempted to evaluate the insured's *objectively* reasonable expectations under that criteria. (*Ibid.*) We have examined this same language in Pacific's policy and use the same criteria as we did in *Lebas*, but in the context of the facts in this case, we reach an entirely different result. We do not see how Mez's inducement of the infringement of Ductmate's particular patents reasonably could be considered to be the misappropriation of an "advertising idea" or "style of doing business." Similarly, as we discuss below, we see no reasonable basis for characterizing such inducement as constituting the infringement of a "copyright, title or slogan." As the federal cases we discuss below have said, such a construction would be offensive to both commonly understood meaning as well as common sense.

While we are aware of at least two cases which have concluded that the language in pre-1986 policies which described the offense of "piracy" was ambiguous enough to embrace patent infringement (see *New Hampshire Ins.* v. *R.L. Chaides Const., supra,* 847 F.Supp. at p. 1456; *National Union Fire Ins. Co.* v. *Siliconix, Inc.* (N.D.Cal. 1989) 729 F.Supp. 77, 79),[14] we are

---

[13]In *Lebas*, we did not reach or consider the question of whether the second definitional element of advertising injury offenses ("infringement of copyright, title or slogan") was similarly ambiguous. (*Lebas, supra,* 50 Cal.App.4th at p. 567, fn. 15.)

[14]Mez also cites us to the decision of the Nebraska Supreme Court (*Union Ins. Co.* v. *Land and Sky, Inc.* (1995) 247 Neb. 696 [529 N.W.2d 773]) which held that an insured, under a policy defining one of the advertising injury offenses as "piracy," was entitled to a defense in a patent infringement action. Not only did that case involve a pre-1986 policy, and is thus not very helpful to us, but also the same insurer had issued the insured an excess policy which had expressly excluded coverage for patent infringement. The *Land and Sky* court found the term "piracy" to be ambiguous primarily because of this inconsistency between these two policies.

aware of no California or federal case which has reached a similar result with respect to the *post*-1986 policy language before us.[15]

On the other hand, there are a number of cases which have concluded that the new language is not ambiguous, *at least in the context of a coverage claim for patent infringement*, and that no coverage is provided. Obviously, if patent infringement cannot properly be characterized as an advertising injury offense, then neither could its inducement. In *Owens-Brockway Glass* v. *International Ins. Co.* (E.D. Cal. 1995) 884 F.Supp. 363, the court rejected the coverage claim of an insured who had suffered a judgment for non-wilful patent infringement in the sum of $36,485,400.

When the insured sued its insurer to recover the judgment, the court concluded that patent infringement simply was not covered. The *Owens-Brockway* court applied the same principles of policy construction discussed above and then stated: "Plaintiff argues that patent infringement is included within the policy language insuring advertising injury as 'infringement of title' or 'misappropriation of style of doing business.'[16] Plaintiff consults the dictionary to find that the word 'title' can refer to ownership of property such as a patent. Under this argument, the phrase 'infringement of . . . title' could refer to infringement of a patent. Similarly, plaintiff argues that 'misappropriation of style of doing business' could refer to patent infringement. Neither claim is reasonable, however, when the words 'title' and 'style of doing business' are examined in the context of their use and in the light of common sense. [¶] First, and perhaps most significantly, there is the glaring absence of the word 'patent' anywhere in the policy language defining advertising injury. The language defining 'advertising injury' includes 'slander[,]' 'libel,' 'right of privacy,' 'advertising ideas,' 'style of doing business,' and 'copyright.' These are specific terms connected to well known legal categories, just as a claim of patent infringement is a distinct legal claim. But there is not a mention of 'patent' anywhere in the definition or elsewhere in the policy. Surely if coverage for patent infringement were anticipated there would be some mention of the term itself just as 'copyright' is explicitly listed. Several courts have commented vigorously on the significance of the omission of any reference to patent in the definition of advertising injury: '[I]t is nonsense to suppose that if the parties had

---

[15]Mez asks us to give weight to the cases construing the pre-1986 language based on evidence of the *drafting history* of the post-1986 policies which reflect the drafters' view that the new advertising injury did not change "the scope" of the coverage previously available. Apart from the impression and vagueness of such comment, we decline that invitation for all of the reasons articulated by the court in *ACL Technologies, Inc.* v. *Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1790-1792 [22 Cal.Rptr.2d 206]. In that case, the court criticized reliance on such drafting history and refused to consider it.

[16]Mez makes the same arguments here as were expressly considered and rejected by the *Owens-Brockway* court.

intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of "copyright, title or slogan," but then include patent infringement, *sub silentio*, in a different provision, by reference to 'unauthorized taking of . . . [the] style of doing business.' [Citation.] . . . 'It is even more absurd to suggest that the phrase "infringement of . . . title," as used in the clause "infringement of copyright, title or slogan", encompasses patent infringement or inducement to infringe. Basic common sense dictates that if these policies covered any form of patent infringement, the word 'patent' would appear in the quoted 'infringement' clauses.' [Citation.] Moreover, as noted above, the policy language at issue here does not include the terms 'piracy' or 'unfair competition'; it lists well recognized and narrow categories of legal claims among which patent infringement is notably absent. [¶] Second, neither the term 'infringement of title' nor 'misappropriation of style of doing business' suggests coverage of patent claims when these terms are viewed in the context of their use. One of the most significant parts of that context is that both terms are part of the definition of 'advertising injury.' There is nothing about the term 'advertising injury' itself that remotely suggests coverage of patent infringement." (884 F.Supp. at p. 367, fns. omitted.)

In *Gencor Industries* v. *Wausau Underwriters Ins. Co.* (M.D.Fla. 1994) 857 F. Supp. 1560, the court concluded that neither patent infringement nor inducement of infringement were covered offenses under this same policy language. Its reasoning was identical to that expressed by the *Owens-Brockway* court. (857 F.Supp. at p. 1564.) Finally, in *St. Paul Fire & Marine* v. *Advanced Interventional* (E.D.Va. 1993) 824 F.Supp. 583, 584-587, the court, applying California law, reached that same conclusion.

We think the analysis of these federal decisions is persuasive and we adopt their reasoning here. In the *context of the facts and circumstances of this case,* the policy terms "misappropriation of an advertising idea or style of doing business" and "infringement of copyright, title or slogan" simply could not be reasonably read by a layperson to include either patent infringement or the inducement thereof. This conclusion is consistent with the principles of contextual reasonableness which we have already summarized. Clearly, the Ductmate patents did not involve any process or invention which could reasonably be considered an "advertising idea" or a "style of doing business."

With respect to Mez's argument that there is coverage under the "infringement of . . . title . . ." provision in the policy, we reach the same conclusion. Our construction of that phrase is informed by the doctrine of *ejusdem generis* under which a term is interpreted by reference to the surrounding language. (See, e.g., *American Motorists Ins. Co.* v. *Allied-Sysco Food Services, Inc.* (1993) 19 Cal.App.4th 1342, 1349 [24 Cal.Rptr.2d 106], disapproved of on another ground in *Buss* v. *Superior Court* (1997) 16 Cal.4th 35,

50, fn. 12 [65 Cal.Rptr.2d 366, 939 P.2d 766] [policy covering "humiliation" was "limited to those cases in which humiliation damages arise out of the types of torts in which it is grouped—i.e., libel, slander, defamation of character, and invasion of the right to privacy"]; *Waranch* v. *Gulf Insurance Co.* (1990) 218 Cal.App.3d 356, 360-361 [266 Cal.Rptr. 827] ["private occupancy," when grouped with "wrongful entry" and "wrongful eviction," could only mean occupancy of *real property*, not a motor vehicle]; *Martin Marietta Corp.* v. *Insurance Co. of North America* (1995) 40 Cal.App.4th 1113, 1133 [47 Cal.Rptr.2d 670] [the policy term "other invasion of the right of private occupancy" must be read as similar to terms "eviction" and "trespass" appearing in same coverage phrase]; *Truck Ins. Exchange* v. *Bennett* (1997) 53 Cal.App.4th 75, 86 [61 Cal.Rptr.2d 497] [coverage for "disparagement" tort "cannot reasonably be read to include any more than those causes of action customarily grouped together into the legal category of defamation"]. Applying this principle here, Mez's contention that a claim of patent infringement falls within the "infringement of . . . title . . ." must be rejected. The advertising offense, "infringement of copyright, title or slogan" must be read as a whole and interpreted by reference to all of the words used, and in full recognition that the words "patent infringement" are *not* included. In our view, reading the phrase as a whole compels the reasonable conclusion that coverage is *at most* provided for claims involving (1) those matters which are protected by copyright statutes and decisions, and (2) those literary, musical, artistic or commercial titles, marks or slogans which are protected by common law principles of unfair competition.[17] The phrase simply cannot reasonably be interpreted to encompass claims involving patent infringement.

A number of courts agree with this conclusion. (*Owens-Brockway Glass* v. *International Ins. Co., supra,* 884 F.Supp. at p. 368 ["The term 'infringement of title' is part of a list that includes copyright and slogan. In company with these terms, 'title' apparently refers to a name, such as a name of a literary or artistic work, rather than to ownership of an invention or other thing"]; *ShoLodge, Inc.* v. *Travelers Indem. Co. of Illinois* (6th Cir. 1999) 168 F.3d 256, 259-260 [in a service mark infringement case, the court held the term

---

[17]This conclusion is consistent with our Supreme Court's recent decision in *Palmer* v. *Truck Ins. Exchange* (1999) 21 Cal.4th 1109 [90 Cal.Rptr.2d 647, 988 P.2d 568], where the court considered the scope of the coverage provided under this same clause (1) in the context of a claim for infringement of a registered business mark, (2) where the insured's policy contained an exclusion for claims based on "infringement of registered trade mark service mark or trade name," except for those relating to "titles or slogans." In the presence of such policy language, the word "title" could not subsume "trade mark," "service mark" or "trade name." Therefore, the court concluded, "[o]nly one definition fits: the name of a literary or artistic work. Because these names can be trademarked, adopting this definition of 'title' carves out a limited exception and gives effect to every part of the Policy's trademark exclusion clause." (*Id.* at p. 1117.)

"title" was *unambiguous* and was defined as the "non-copyrightable title of a book, film, or other literary or artistic work"]; *Atlantic Mut. Ins. Co.* v. *Brotech Corp.* (E.D.Pa. 1994) 857 F.Supp. 423, 429 [the court declined to hold infringement of title encompassed patent infringement on the ground that the term "title" referred to a distinctive name or designation, rather than to the legal concept of ownership of property].)

Recently, another court had occasion to construe this same policy language in a case where coverage was sought for a claim of patent infringement asserted in the underlying lawsuit. That court, as do we, placed emphasis on the absence of any reference to "patent infringement" in the policy language. The court then stated, "The drafters of this policy placed 'title' between 'copyright' and 'slogan.' A slogan is a brief, attention-getting phrase used in advertising or promotion. A copyright is the exclusive right, granted by statute to an author or original creator to reproduce, publish and sell the matter and form of a literary, musical or artistic work or production. Neither of these terms has any apparent connection to the concept of ownership interests in property, let alone the legal right to make use, sell or offer to sell a patented invention. Hence, while dictionaries attribute several meanings to the word *title*, including the legal ownership of property (Black's Law Dict. (5th ed. 1979) p. 1331, col. 1), when read in the context of the CGL policy, 'title' can only mean a distinctive name, designation or other appellation." (*Maxconn Inc.* v. *Truck Ins. Exchange* (1999) 74 Cal.App.4th 1267, 1276-1277 [88 Cal.Rptr.2d 750], fn. omitted.)

Thus, when read in the context of the entire policy, the general circumstances of this case and simple common sense, the advertising injury provisions simply do not extend to patent infringement. Moreover, even if the policy language is not totally free from some ambiguity, Mez could not, in light of such contextual considerations, have had an *objectively reasonable* expectation of coverage for a claim of *inducing* wilful patent infringement. Therefore, such a claim would not be covered as an advertising injury offense.

(2) *Coverage for Inducement of Patent Infringement Is Barred by Section 533*

As our brief initial discussion of inducing patent infringement demonstrated, in order to be found liable, a party must have the specific intent to induce another to infringe the patent holder's prior right. (*Manville Sales Corp.* v. *Paramount Systems, Inc., supra,* 917 F.2d at p. 553.) Accordingly it must be shown that "the defendant possessed *specific intent* to encourage another's infringement and *not merely that the defendant had knowledge* of the acts alleged to constitute inducement." (*Ibid.,* italics added; see also *National Presto Industries, Inc.* v. *West Bend Co.* (Fed. Cir. 1996) 76

F.3d 1185, 1194, italics added [the "statutory liability for inducement of [patent] infringement derives from the common law, wherein acts that *the actor* knows will lead to the commission of a wrong by another, place shared liability for the wrong on the actor"].)

In *Dynamis, Inc.* v. *Leepoxy Plastics, Inc.* (N.D.Ind. 1993) 831 F.Supp. 651, the court stated: " '[A] person infringes by actively and *knowingly* aiding and abetting another's direct infringement. Although section 271(b) does not use the word 'knowing,' the case law and legislative history uniformly assert such a requirement." (*Id.* at p. 656, italics in the original, citing *Water Technologies Corp.* v. *Calco, Ltd., supra,* 850 F.2d at p. 668.) Thus, "it is clear that under § 271(b) an accused infringer must be shown to have actual knowledge of the patent and the infringement *and have the actual intent to induce the infringement.*" (831 F.Supp. at p. 657, italics added.) Absent proof that the defendant "had an actual intent to induce infringement," there is no liability and summary judgment in favor of the judgment must be granted. (*Ibid.*; see also *Hewlett-Packard Co.* v. *Bausch & Lomb, Inc.* (Fed. Cir. 1990) 909 F.2d 1464, 1469, fn. omitted ["we are of the opinion that proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement. And it is proof of that intent which is missing in the present case"]; *R2 Medical Systems, Inc.* v. *Katecho, Inc.* (E.D.Ill. 1996) 931 F.Supp. 1397, 1440-1441 [liability for inducing infringement under 35 United States Code section 271(b) requires proof that defendant knew that the combination for which its component was especially designed was both patented and infringed and that the defendant "specifically intended that its sale or other challenged acts induce its customers to engage in the conduct that allegedly directly infringes"].)[18]

█ A "wilful act" under section 533 will include either "an act deliberately done for the *express purpose* of causing damage or intentionally

---

[18]A number of other cases have reached the exact same conclusions. (See *Young Dental Mfg. Co.* v. *Q3 Special Products, Inc.* (E.D.Mo. 1995) 891 F.Supp. 1345, 1348, app. dism. (Fed. Cir. 1996) 106 F.3d 423 ["the accused infringer must be shown to have had actual knowledge of the patent and the actual intent to induce the infringement"]; *Beraha* v. *C.R. Bard, Inc.* (N.D.Ga. 1994) 870 F.Supp. 1085, 1090 ["Plaintiff bears the burden of proving that Defendants actively induced infringing acts and had the specific intent to encourage actual infringement[s]" (italics omitted)]; *L.A. Gear, Inc.* v. *E.S. Originals, Inc.* (C.D.Ca. 1994) 859 F.Supp. 1294, 1300 [35 U.S.C. § 271(b) requires "a specific intent to encourage infringement of the patent"].)

Even cases decided *prior* to *Manville Sales Corp.* expressed the same view. (See *Water Technologies Corp.* v. *Calco, Ltd., supra,* 850 F.2d at p. 668 ["proof of [specific knowing] intent is necessary" under 35 U.S.C. § 271(b)]; *Sims* v. *Western Steel Co.* (10th Cir. 1977) 551 F.2d 811, 817 [§ 271(b) requires intent to induce infringement]; *Honeywell, Inc.* v. *Metz Apparatewerke, supra,* 509 F.2d at p. 1142 [to be held liable under § 271(b), "one must purposefully cause, urge or encourage another to infringe"]; *Oak Industries, Inc.* v. *Zenith Electronics Corp.* (N.D.Ill. 1989) 726 F.Supp. 1525, 1542 ["proof of intent to induce infringement is a requirement for liability under 35 U.S.C. § 271(b)"]; *H.B. Fuller, Co.* v.

performed *with knowledge* that damage is highly probable or *substantially certain* to result." (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 742 [15 Cal.Rptr.2d 815], italics added.) It also appears that a wilful act includes an intentional and wrongful act in which "the harm is inherent in the act itself." (*J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1025 [278 Cal.Rptr. 64, 804 P.2d 689].) In an earlier case, the Supreme Court had said that "even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability . . . unless it is done with a 'preconceived design to inflict injury.' [Citations.]" (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098].) However, the issue to which the *Clemmer* court spoke involved a question of the insured's mental capacity. Subsequent decisions have made clear that the "preconceived design to injure" standard is relevant only when the insured's "mental capacity is an issue or the insured's intent or motive might justify an otherwise wrongful act." (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at p. 740; *J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d at p. 1023.) Citing *J.C. Penney,* the *Shell Oil* court emphasized that "section 533 precludes *indemnification, whether or not the insured subjectively intended harm,* if the insured seeks coverage for an intentional, wrongful act that is inherently and necessarily harmful." (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at pp. 740-741, italics added.)

Although it was speaking in the context of an environmental pollution case, the *Shell Oil* court properly summarized the rule which governs the scope and application of section 533: "We conclude that section 533 prohibits indemnification of more than just intentional acts that are subjectively desired to cause harm and acts that are intentional, wrongful, and necessarily harmful regardless of subjective intent. *A 'wilful act' under section 533 must also include a deliberate, liability-producing act that the individual, before acting, expected to cause harm. Conduct for which the law imposes liability, and which is expected or intended to result in damage, must be considered wrongful and willful. Therefore, section 533 precludes indemnification for liability arising from deliberate conduct that the insured expected or intended to cause damage.*" (12 Cal.App.4th at pp. 742-743, italics added.)

We believe that the circumstances presented here clearly come within this analysis of the proper application of section 533. An inducement

*National Starch and Chemical Corp.* (D.Minn. 1988) 689 F.Supp. 923, 943 [establishing inducement of patent infringement requires proving "an act by the defendant knowingly calculated to induce another to infringe"]; *Procter & Gamble Co.* v. *Nabisco Brands, Inc.* (D.Del. 1985) 604 F.Supp. 1485, 1488 ["most courts and commentators have concluded that liability can be imposed [under § 271(b)] only for knowing and intentional inducement of infringement"].)

to patent infringement under 35 United States Code section 271(b), as alleged in the underlying Ductmate action, could not be committed except as a knowing, intentional and purposeful act that is clearly wrongful[19] and necessarily harmful. A defendant would have to intend the act, that is, to intend that the induced party infringe the patent. Such an impermissible motivation is necessary to liability for the act of inducement and it thus involves wilful and intentional misconduct. Obviously, damage would flow in the form of a loss to Ductmate and a gain to Mez through the sale of *its* products. Plainly, such a result would necessarily have to be within Mez's knowledge. Indeed, it would be Mez's presumed purpose. This is enough to satisfy the requirements of section 533.

Thus, even if the post-1986 policy language embraced patent infringement, its inducement would be excluded under section 533. Two recent cases which have directly considered this question have expressly so held. (*Aetna Casualty & Surety Co.* v. *Superior Court* (1993) 19 Cal.App.4th 320, 330-333 [23 Cal.Rptr.2d 442]; *Intex Plastics Sales Co.* v. *United Nat. Ins. Co.* (9th Cir. 1994) 23 F.3d 254, 256-257.)[20] Mez argues that we should reject those cases as wrongly decided. We decline to do so. Our discussion and analysis, which is based in part on prior decisions of this court examining the scope and breadth of section 533 (see *Downey Venture* v. *LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 500-502 [78 Cal.Rptr.2d 142] and *B & E Convalescent Center* v. *State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 94, 97-99 [9 Cal.Rptr.2d 894]), has caused us to reach the same conclusion as did the *Aetna* and *Intex* courts. We believe they were correctly decided. There is no potential coverage for Mez under the Pacific policy.

### 3. *Pacific Had No Duty to Defend Mez in the Ductmate Action*

What Mez seeks to accomplish in this action is the vindication of its contention that Pacific owed it a duty to defend it in the Ductmate action. It is well settled that where there is no potential for coverage under a liability policy, the insurer owes no duty to defend. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; *Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) It is the potential for coverage under a particular policy, and in light of the specific pleadings and known facts of the third party claim, which establishes the insurer's obligation to defend. (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 295; *Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at p. 1081; *Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 45-47 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

---

[19]The wrongful nature of the act of inducing a patent infringement is expressly and unequivocally established by federal statute. (35 U.S.C. § 271(b).)

[20]Counsel for Mez was also counsel for the insured parties in both the *Aetna* and *Intex Plastics* cases.

However, where a denial of indemnification is based on the application of section 533, it does not necessarily follow that no duty to defend exists. As we stated in *B & E Convalescent Center*, " '[S]ection 533 precludes only *indemnification* of wilful conduct and not the *defense* of an action in which such conduct is alleged. [Citation.] . . . [¶] . . . [E]ven though public policy or section 533 precludes an insurer from indemnifying an insured in an underlying action the duty to defend still exists so long as the "insured reasonably expect[s] the policy to cover the types of acts involved in the underlying suit[.]" [Citation.]' [Citation]. Put another way, 'if the reasonable expectations of an insured are that a defense will be provided for a claim, then the insurer cannot escape that obligation merely because public policy precludes it from indemnifying that claim.' [Citation.]" (*B & E Convalescent Center* v. *State Compensation Ins. Fund, supra*, 8 Cal.App.4th at p. 93, italics in original.)

As we have explained, however, no potential for coverage exists in this case and Mez could not have had *any* objectively reasonable expectation of such coverage. Similarly, to the extent that section 533 alone is relied upon to preclude coverage, we see nothing in this record or in the arguments of Mez which would prompt us to conclude that Mez had any reasonable expectation of a defense even though indemnification was excluded. (See generally, *B & E Convalescent Center* v. *State Compensation Ins. Fund, supra*, 8 Cal.App.4th at pp. 99-102.)[21] Therefore, for the reasons discussed above, Pacific owed no duty to defend Mez in the Ductmate action and the trial court correctly sustained Pacific's demurrer to Mez's complaint.

## DISPOSITION

The judgment is affirmed. Pacific shall recover its costs on appeal.

Klein, P. J., and Kitching, J., concurred.

On December 21, 1999, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 22, 2000.

---

[21]Unlike the insured in *Downey Venture* v. *LMI Ins. Co., supra*, 66 Cal.App.4th 478 who was sued for malicious prosecution, Mez cannot point to a policy provision making a specific promise of coverage for conduct as to which indemnification was nonetheless precluded by section 533.